608 S.E.2d 787 (2005)
In the Matter of V.L.B.
No. COA04-219.
Court of Appeals of North Carolina.
March 1, 2005.
Stephen M. Schoeberle, Morgan, for the Burke County Department of Social Services-petitioner-appellee.
Starnes, Teele, Aycock, Haire & Treibert, PA, by Nancy L. Einstein, Morganton, for Guardian ad Litem-appellee.
Carlton, Rhodes & Carlton, by Gary C. Rhodes, Salisbury, for respondent-mother-appellant.
Charlotte Gail Blake, Jefferson, for respondent-father-appellant.
*789 CALABRIA, Judge.
A.B. ("respondent-mother") and K.B. ("respondent-father") (collectively "respondents") appeal an order of the Burke County District Court terminating their parental rights to the minor child, V.L.B. We affirm.
The evidence indicates the termination of parental rights issues in this case arose after the Burke County Department of Social Services ("DSS") substantiated a report that respondent-mother was living in a house without electricity and that the State of Michigan had terminated respondents' parental rights to their other children, principally due to abuse committed by respondent-father and respondent-mother's unwillingness to remain separated from him. Respondents moved from Michigan to North Carolina in June 2002 on V.L.B's due date. V.L.B. was born approximately one week later on 10 June 2002. She was the seventh child born to respondent-mother and the fifth born to respondents. On 17 June 2002, seven days after birth, V.L.B. was released from the hospital and immediately placed in the custody of DSS. Subsequently, V.L.B. was placed in a foster-to-adopt home under the supervision of DSS. On 15 August 2002, all parties consented to a dependency adjudication based on the State of Michigan's prior terminations of respondents' parental rights to their other children, respondents' psychological diagnoses, and respondents' lack of psychological treatment. The trial court continued disposition until current psychological evaluations could be completed.
The evidence indicates respondents received psychological evaluations on 16 September 2002. Respondent-mother's psychological evaluation revealed she had: (1) "a very high level of anxiety and tension[,] ... to [a] degree that her ability to concentrate and attend [appeared] significantly compromised"; (2) "difficulty with anger management"; (3)"low frustration tolerance [and] poor impulse control"; (4) "many characteristics consistent with persons who have been found substantiated for child abuse"; and (5) "[a] significant likelihood of high levels of anxiety, depression and loss of emotional and behavioral control." The evaluating psychologist's clinical impression was that she suffered from an adjustment disorder with anxiety and a borderline personality disorder. The psychologist concluded:
A review of DSS records, previous psychological evaluations and current circumstances do not provide a positive prognosis for [respondent-mother's] ... ability to care for [V.L.B.] Many of the circumstances that led to the termination of parental rights of her children in Michigan continue currently. [She] continues to have chronic mental health problems, as well as more acute anxiety problems. Although she expressed interest in change, her personality problems are not easily amenable to change.
Respondent-mother met with a counselor one time shortly after giving birth to V.L.B. but sought no further help for her mental health problems and testified that she did not need mental health treatment.
*790 Respondent-father's psychological evaluation revealed he had: (1) "chronic mental illness, which [had] not adequately responded to medication"; (2) symptoms of depression; (3) "speech processes [that were] tangential and circumstantial ... [and] difficulty answering simple questions"; (4) poor concentration and a high level of distractibility; (5) a history of intermittent psychiatric and psychological treatment but had "not been able to follow through with a long course of treatment"; (6) a brain injury from a 1999 car accident that exacerbated his mental illness; and (7) a September 2001 commitment to an inpatient psychological institution for threatening to assault respondent-mother. The evaluating psychologist's clinical impression was that he suffered from psychosis not otherwise specified and personality disorder not otherwise specified with Schizotypal features. Additionally, his record from prior evaluations indicated bipolar disorder, but he showed no significant signs of bipolar disorder in this evaluation. The psychologist concluded:
Based on the previous evaluations and the current information, it does not appear that [respondent-father] has made any progress [between] the time ... [his] parental rights [were] terminated [to the other children and this evaluation]. It's unlikely that he would be capable of constructively parenting an infant at this time, and there are no recommendations, given this finding.
Respondent-father's physical condition, as reported by his physician, included a diagnosis of type II diabetes. It appears respondent-father's physician considered his diabetes in conjunction with his mental illness and memory problems and recommended he receive "round-the-clock care."
After reviewing the psychological evaluations, the trial court entered an order ceasing reunification efforts and ordered adoption as the permanent plan for V.L.B. On 27 March 2003 and again on 17 July 2003, the trial court reviewed the permanent plan and entered orders maintaining adoption as the permanent plan for V.L.B. On 22 September 2003, a termination hearing was held, and all parties were present with representation, including respondent-mother's guardian ad litem and respondent-father's guardian ad litem. At this hearing, the trial court found the parental rights of respondents with respect to their other children had been terminated involuntarily by a court of competent jurisdiction, and although both had the willingness, respondents lacked the ability to establish a safe home for V.L.B. Therefore, the trial court concluded sufficient grounds existed for termination of respondents' parental rights under N.C. Gen.Stat. § 7B-1111(a)(9) (2003). The trial court then determined the best interests of V.L.B. would be served by terminating respondents' parental rights. Respondents appeal.
A proceeding to terminate parental rights consists of two stages: (1) the adjudicatory stage, under N.C. Gen.Stat. § 7B-1109 (2003), and (2) the dispositional stage, under N.C. Gen.Stat. § 7B-1110 (2003). In re Mills, 152 N.C.App. 1, 6, 567 S.E.2d 166, 169 (2002). At the adjudicatory stage, "the petitioner must show by `clear, cogent and convincing evidence' the existence of one or more of the [nine] statutory grounds for termination of parental rights [enumerated in N.C. Gen.Stat. § 7B-1111 (2003)]." Id. (quoting N.C. Gen.Stat. § 7B-1109(f)). Accordingly, in reviewing this stage, we must determine "`whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law.'" In re Shepard, 162 N.C.App. 215, 221, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C.App. 118, 124, 323 S.E.2d 754, 758 (1984)). "`Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt.' And it `has been defined as evidence which should fully convince [the finder of fact].'" In re Nesbitt, 147 N.C.App. 349, 355, 555 S.E.2d 659, 664 (2001) (quoting N.C. State Bar v. Harris, 137 N.C.App. 207, 218, 527 S.E.2d 728, 735 (2000)). If the trial court finds one or more of the nine statutory grounds for termination, "it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." In re Anderson, 151 N.C.App. 94, 98, 564 S.E.2d 599, 602 (2002). At the dispositional *791 stage, "the court shall issue an order terminating the parental rights, unless it ... determines that the best interests of the child require otherwise." In re Matherly, 149 N.C.App. 452, 454, 562 S.E.2d 15, 17 (2002). "We review the trial court's decision to terminate parental rights for abuse of discretion." Anderson, 151 N.C.App. at 98, 564 S.E.2d at 602.
Respondents assert the trial court erred at the adjudicatory stage by concluding that grounds existed under N.C. Gen.Stat. § 7B-1111(a)(9) to terminate their parental rights. Under N.C. Gen.Stat. § 7B-1111(a)(9), a trial court may terminate parental rights when "[t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home."
Respondents do not dispute that their parental rights to their other children were terminated by a court of competent jurisdiction. Rather, respondents argue the trial court's finding that they lacked the ability to establish a safe home for V.L.B. was not supported by clear, cogent, and convincing evidence. We disagree. According to respondent-mother's psychological evaluation, she suffered from "chronic mental health problems[,]" specifically depression, high levels of anxiety and tension, a low frustration tolerance, poor impulse control, and anger management difficulties, all of which would significantly affect her ability to concentrate and attend to the needs of V.L.B. Moreover, her belief that she did not need mental health treatment and her failure to pursue treatment compounded her problems. Furthermore, at the time of the hearing, respondent-mother had been, and intended to continue, personally caring for respondent-father, who, as detailed above, suffered from "chronic mental illness[,]" memory problems, and type II diabetes, which necessitated that he receive "round-the-clock care" and greatly impaired his ability to care for V.L.B. Accordingly, we hold, the following evidence constituted clear, cogent, and convincing evidence supporting the trial court's finding that respondents lacked the ability to establish a safe home for V.L.B.: (1) the chronic nature of respondents' respective mental health conditions; (2) the severity of respondent-father's mental and physical health problems; (3) his need for a full-time care provider; (4) respondent-mother's intention to continue providing this care for him; and (5) the stress respondent-father's mental and physical health problems caused respondents, as evidenced by the daily arguments to which both admitted during their respective psychological evaluations.
Nonetheless, respondents contend the psychological evaluations performed in September 2002 could not have constituted clear, cogent, and convincing evidence of their mental health on 22 September 2003, the date of the termination hearing, especially because respondent-father appeared slightly more stable due to his most recent therapy. However, the severity and chronic nature of respondent-father's mental illness, as described in the psychological evaluation, constituted clear, cogent, and convincing evidence that respondent-father continued to have debilitating mental health issues despite the fact he appeared somewhat more stable on the date of the hearing. Additionally, although the trial court also relied on a September 2002 psychological evaluation for respondent-mother, the persistence of her personality problems characterized in her psychological evaluation as "not easily amenable to change [,]" together with her lack of mental health treatment, constituted clear, cogent, and convincing evidence that her mental health problems had not changed significantly since the evaluation. Accordingly, the trial court did not err by relying on their 2002 psychological evaluations in assessing the severity and chronic nature of respondents' respective mental health conditions. Nor did the trial court err by concluding, based on respondents' history, that they did not have the ability to provide a safe and appropriate home for the minor child.
Respondents next assert that absent clear, cogent, and convincing evidence of a probability that past patterns of abuse or neglect would recur, the trial court had insufficient grounds upon which to terminate their parental rights. In essence, respondents contend *792 a finding of abuse or neglect under N.C. Gen.Stat. § 7B-1111(a)(1) is a prerequisite to terminating parental rights based on N.C. Gen.Stat. § 7B-1111(a)(9). As mentioned above, however, a trial court may terminate a respondent's "parental rights upon a finding of one or more of the [nine statutory grounds]." N.C. Gen.Stat. § 7B-1111(a)(emphasis added). See In re Clark, 151 N.C.App. 286, 288, 565 S.E.2d 245, 246 (2002) (stating "a finding of any one of [the nine] grounds is sufficient to support the termination of parental rights"). Moreover, assuming arguendo evidence of a probability of abuse or neglect was necessary to conclude grounds for termination existed under N.C. Gen.Stat. § 7B-1111(a)(9), the evidence of respondents' respective mental and physical health problems and the strain these problems placed on their ability to maintain a stable household living as a couple, constituted clear, cogent, and convincing evidence of their impaired ability to care for a minor child and an accompanying substantial probability of neglect if the minor child was placed in their household.
Respondents further assert the trial court erred by failing to consider their reasonable progress, and they assign error to the independent clause in one of the trial court's findings of fact, which states, "there has been no significant change in [respondents'] understanding of the problems that led to the removal of their previous children and their ability to address those problems." Contrary to respondents' assertion, when read in its entirety, the trial court's finding indicates the trial court considered respondents' progress but determined the progress was insufficient. In full, the finding states, "Although they have established a stable residence and it appears that they are marginally getting by, there has been no significant change in [respondents'] understanding of the problems that led to the removal of their previous children and their ability to address those problems." Moreover, the finding's independent clause was supported by the following clear, cogent, and convincing evidence: (1) respondents denied respondent-father had abused the previous children; (2) respondent-father believed the previous children were removed simply because respondents were not "able to take care of their immediate needs ... [a]nd provide everything safe and nurturing for them"; (3) respondent-mother had chosen her marriage over the needs of her previous children as evidenced by her decision to return to respondent-father rather than maintain custody of the previous children; (4) respondent-mother was unable to recognize her need for mental health treatment and failed to pursue such treatment; and (5) the demands on respondents due to respondent-father's chronic mental and physical health problems remained substantial.
Respondents finally assert the trial court abused its discretion by basing the termination of their parental rights in any part on V.L.B.'s positive adjustment to her foster home. This Court has stated "a finding that [a] child[ ][is] well settled in [her] new family unit ... does not alone support a finding that it is in the best interest of the child[ ] to terminate [a] respondent's parental rights." Bost v. Van Nortwick, 117 N.C.App. 1, 8, 449 S.E.2d 911, 915 (1994) (emphasis added). However, the trial court here did not base its decision that termination was in the best interests of V.L.B. solely on her positive adjustment to foster care. Rather, the trial court also based its decision on findings that: (1) respondents each had chronic mental health problems; (2) respondents' daily needs, in particular respondent-father's mental and physical health problems, required all of their "emotional, physical and financial resources"; (3) respondents made "no significant change in their understanding of the problems that led to the removal of their previous children"; and (4) there was no significant change in their capacity to address the problems that led to the removal of their previous children. Accordingly, the trial court did not abuse its discretion by considering V.L.B.'s positive adjustment to foster care as one factor in determining that termination of respondents' parental rights was in V.L.B.'s best interests. Furthermore, the trial court did not abuse its discretion by concluding, based on the evidence and its findings of fact, that terminating respondents' parental rights was in the best interests of V.L.B.
*793 We have carefully considered respondents' remaining arguments and find them to be without merit. For the foregoing reasons, the trial court's termination of respondents' parental rights is affirmed.
Affirmed.
Judges ELMORE and STEELMAN concur.