IN RE: A.Q., D.Q., L.Q., J.D.
No. COA06-365
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Beverly D. Basden, P.C., by Beverly D. Basden, for petitioner-appellee Lee County Department of Social Services.
Elizabeth Myrick Boone for appellee Guardian ad Litem.
Harrington Ward Gilleland & Winstead, by Eddie Winstead, III, for appellee Guardian ad Litem.
Fred D. Webb, Jr. for respondent-appellee Louis Lee Davis.
Robert Reives for respondent-appellee Nicholas Quick.
Susan J. Hall for respondent-appellant.
HUNTER, Judge.
Lydia Quick ("respondent") appeals from an order terminating her parental rights to the minor children A.Q., D.Q., L.Q., and J.D. For the reasons stated herein, we affirm the order of the trial court.
The Lee County Department of Social Services ("LCDSS") became involved with respondent's family on 7 July 2002 when L.Q. was left alone in a Lee County Wal-Mart store. L.Q. was taken to the police station where respondent and Louis Lee Davis ("Davis") came together to pick him up. Respondent stated Davis was her friend. LCDSS ran a criminal record check on Davis and discovered that he had been convicted of involuntary manslaughter for the death of his four-month-old daughter from a previous relationship, who died from injuries consistent with Shaken Baby Syndrome. Additionally, Davis's parental rights to two other children were terminated in 2003 by the Harnett County Department of Social Services as a result of injuries to one of the children consistent with Shaken Baby Syndrome. Respondent admitted that she was aware of Davis's criminal history, but asserted that the convictions were a result of a conspiracy against him.
LCDSS also ran a criminal background check on Nicholas Quick ("Quick"), the father of L.Q., A.Q., and D.Q. At the time of the hearing, Quick was incarcerated for kidnapping and assault on a female for an incident involving respondent. There was also a history of domestic violence between Quick and respondent.
LCDSS received additional reports on 6 June 2003 and 13 January 2004 regarding the children. On each occasion, respondent denied leaving the children at home alone with Davis. However, Davis was at the home on several visits from LCDSS, and on one occasion was the only adult present.
On 9 March 2004, J.D. was born to Davis and respondent. J.D. began to experience irritability and subsequently had a seizure. Respondent took him to UNC Hospital on 6 May 2004. Dr. Molly Curtin Berkoff of UNC Hospitals diagnosed J.D. with Battered Child Syndrome. The next day, LCDSS was contacted concerning possible abuse and neglect of the children. The paternal grandparents of D.Q., A.Q., and L.Q. reported the incident with J.D, as well as bruises they had noticed on D.Q. and A.Q. that appeared to be hand prints.
Both respondent and Davis denied knowledge of how the children were injured. However, respondent eventually admitted leaving the children home alone with Davis on three separate occasions. Respondent left all four children alone with Davis on 28 April 2004 and 5 May 2004. She left three of the children alone with Davis on 4 May 2004 while she took L.Q. to the dentist.
LCDSS filed a juvenile petition on 21 May 2004 alleging that respondent and/or her boyfriend, Davis, had abused and/or neglected D.Q., A.Q., L.Q., and J.D. The children were placed in the custody of LCDSS. D.Q., A.Q., and L.Q. were placed in the physical care of their paternal grandparents and J.D was placed with his maternal grandmother. There were multiple continuances granted in an effort to serve Davis with the petition and summons. The adjudication hearing was held on 24 August 2004 and all four children were adjudicated abused and neglected.
In a subsequent dispositional hearing on the same day, the trial court found that a plan for reunification of the family was feasible upon the completion of psychological testing of respondent. The trial court determined that it was in the children's best interests to remain in the custody of LCDSS and maintain their current placements, with visitation granted to respondent. The trial court further ordered that all of the parents pay child support for the children, and that Davis was to have no contact with the children. The case was set for review on 23 November 2004.
Respondent's motion for change of venue to Robeson County was denied on 9 November 2004, and the review hearing was continued twice due to conflicts with respondent's attorney and Quick's attorney. J.D. was removed from his maternal grandmother's care and placed in foster care on 22 November 2004 due to concerns about the maternal grandmother's home.
The continued review hearing was conducted on 18 January 2005. The trial court found that respondent had made some progress in addressing the issues that led to the removal of the children, in that respondent had completed a case plan with LCDSS and agreed not to have relationships with Quick, Davis, or other abusive men. The trial court continued the plan for reunification as well as legal custody of all children with LCDSS. Another review hearing was set for 24 May 2005.
Respondent filed a motion on 17 May 2005 to return the children to her custody following incarceration of Davis pursuant to a guilty plea for the charges related to injuries inflicted on J.D. The motion was heard on 24 May 2005. Respondent reported that she had begun a relationship with Julius Johnson ("Johnson"), who had previously been convicted of indecent liberties with a child. Respondent stated that she mainly went to church with Johnson, but the trial court found such testimony not credible. The trial court found that although respondent could articulate"red flags" in a relationship, she did not demonstrate that she recognized beginning a relationship with a potentially abusive or sexually aggressive person. The trial court also found that respondent did not have an established residence or employment, and was in arrears on her court-ordered child support. The trial court ordered that reunification efforts should cease and the permanent plan be changed to adoption.
On 29 July 2005, LCDSS filed a motion to terminate the parental rights of Davis, Quick, and respondent. Subsequently, respondent's attorney withdrew from the case due to a change in employment and several continuances were granted for respondent to receive appointment of new counsel. The termination hearing was held on 18 October 2005.
Testimony was offered by S.R., a half brother to D.Q., A.Q., and L.Q., that he stayed at respondent's home on many occasions, and that he saw Davis hit the children. He also testified that respondent was in the room when this occurred and did nothing to stop Davis. According to S.R., respondent sat in the corner and cried.
Respondent testified that she moved into a house in Hope Mills, North Carolina, two weeks before the hearing. Respondent also testified that she had recently obtained new employment at a salon as a massage therapist beginning in September 2005.
Additional evidence presented at the hearing revealed that respondent appeared to care for her children and attended substantially all visits with them. Although respondent completedher parenting program and counseling through the domestic abuse center, testimony was given that the "women that take the courses tend to return to abusers 6 to 8 times." Respondent had completed a psychological evaluation and was diagnosed with post traumatic stress disorder. Respondent's therapist testified that if respondent could establish a stable home with stable employment so that she did not need to be dependent on others, she would be able to protect her children.
The trial court found that respondent was aware of Davis's history with children and his abusive nature with her own children, but did nothing to protect the children. The trial court further found that respondent never established an appropriate residence for the children until more than a year after they were removed from her care and, but for the continuances, she would not have had a residence at the time of the hearing. Additionally, the trial court found that even though respondent now had a residence, she could not guarantee that she could continue to make the house payments or pay the bills necessary to adequately provide for the children.
The trial court concluded that there was sufficient evidence that respondent had not learned the lessons of the domestic violence group and that she was likely to repeat her history of choosing men who are abusive. The trial court also found that the cost of care for the children exceeded $18,000.00 and that respondent paid less than $2,400.00 toward their care. The trial court ordered the termination of respondent's parental rights to her children on the grounds that respondent had not made reasonable efforts to correct the circumstances that necessitated the children's removal from her home, and held that it was in the children's best interests to terminate respondent's parental rights. Respondent appeals.

I.
Respondent first contends that the trial court erred in concluding as a matter of law that respondent willfully left the children in foster care or placement outside the home for more than twelve months without showing reasonable progress. We disagree.
A hearing on a petition to terminate parental rights consists of two stages, adjudication and disposition. In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38 (1986). During the adjudicatory stage, pursuant to N.C. Gen. Stat. § 7B-1109 (2005), the trial court determines whether grounds for termination exist. The dispositional phase of the hearing, pursuant to N.C. Gen. Stat. § 7B-1110 (2005), determines whether termination would be in the best interests of the children. The standard of review on appeal is different for each stage of the hearing. See In re V.L.B., 168 N.C. App. 679, 683-84, 608 S.E.2d 787, 790-91, disc. review denied, 359 N.C. 633, 614 S.E.2d 924 (2005).
At the adjudication stage of the proceeding, the petitioner has the burden of proving that grounds for termination under N.C. Gen. Stat. § 7B-1111 (2005) exist. N.C. Gen. Stat. § 7B-1109(f). The standard of review for the adjudication stage is "`"whether the [trial court's] findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law."'" In re V.L.B., 168 N.C. App. at 683, 608 S.E.2d at 790 (citations omitted). The clear, cogent, and convincing evidentiary standard requires more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. Id. Once the trial court has determined that one or more of the nine grounds set out in N.C. Gen. Stat. § 7B-1111 exists, the trial court proceeds to the dispositional phase of the hearing. Id.
Parental rights may be terminated upon a finding by the court that:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. 7B-1111(a)(2). A willful respondent is one who "had the ability to show reasonable progress, but was unwilling to make the effort." In re Fletcher, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002). "A finding of willfulness does not require a showing of fault by the parent." Id.
A parent who has recognized her inability to care for the children and, thus, voluntarily leaves them in foster care may be deemed willful even if the parent has made some effort to regain custody. In re Nolen, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995). The parent must show that positive efforts were taken to improve the circumstances and that these efforts produced or are producing positive results. Id. at 700, 453 S.E.2d at 225. "[A] respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness `regardless of her good intentions[.]'" In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004).
Here, the evidence showed that, despite counseling and classes on domestic violence, and contrary to her prior agreement, respondent had become involved in a relationship with an abusive man who was a registered sex offender. Respondent had also failed to obtain full-time employment as ordered by the court until shortly before the termination hearing. Moreover, respondent failed to find adequate housing for the children until two weeks prior to the hearing, nearly seventeen months after the children were removed from respondent's care.
Clear, cogent, and convincing evidence supports the trial court's findings that respondent had the ability, but was unwilling to make the effort, to make reasonable progress in obtaining steady employment and housing until shortly before the hearing. This evidence supports the conclusion that respondent willfully left the children in the custody of LCDSS for more than twelve months without showing reasonable progress. See, e.g., In re B.S.D.S., 163 N.C. App. at 545-46, 594 S.E.2d at 92-93 (holding that the respondent failed to make reasonable progress despite evidence of limited compliance with the orders of the court shortly before the termination hearing); In re Oghenekevebe, 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996) (holding that the respondent failed to show reasonable progress, despite attempts to regain custody and participation in parenting classes, due to the respondent's inability to care for her child and failure to show progress in therapy until parental rights were in danger). This assignment of error is overruled.
Respondent presents additional assignments of error regarding findings of facts related to other grounds for termination. However, we do not reach these issues as only one of the nine grounds listed in N.C. Gen. Stat. § 7B-1111 must be found to proceed to the dispositional stage of the proceeding. In re V.L.B., 168 N.C. App. at 683, 608 S.E.2d at 790.

II.
By her next assignment of error, respondent contends that the trial court erred when it failed to hold a separate dispositional hearing pursuant to N.C. Gen. Stat. 7B-1110. We disagree.
Pursuant to N.C.R. App. P. 10(b)(1), a party must file a timely request, objection or motion with the trial court stating the specific grounds for its desired ruling, if not apparent, in order to preserve a matter for appeal. Hearndon v. Hearndon, 132 N.C. App. 98, 103, 510 S.E.2d 183, 187 (1999). Counsel for respondent failed to make any objections or file any motions requesting a separate dispositional hearing nor did he ask to be heard on the dispositional decision. Therefore, respondent failed to preserve this issue for appeal. This Court has held that there is no requirement that the two stages be held in separate proceedings as long as the trial court applies the proper evidentiary standard at each stage. In re White, 81 N.C. App at 85, 344 S.E.2d at 38. There is a presumption that the trial judge knows the law and is able to apply the correct standard to the relevant evidence to both stages. Id.
Here, the trial court's findings demonstrate that the trial court applied the appropriate evidentiary standard at each stage. The trial court considered the appropriate factors as set out in N.C. Gen. Stat. § 7B-1110. The court also noted the relevant considerations in concluding that it was in the children's best interests to terminate respondent's parental rights. Therefore, the trial court did not abuse its discretion in deciding not to hold a separate dispositional hearing.

III.
Respondent finally contends that the trial court erred in concluding as a matter of law that it was in the children's best interests that respondent's parental rights be terminated. We disagree.
The standard of review on appeal for the dispositional stage is whether the trial court abused its discretion in finding that termination would be in the best interest of the child. In re C.C., J.C., 173 N.C. App. 375, 380-81, 618 S.E.2d 813, 817 (2005). At the dispositional stage, the trial court must determine whether termination of the parental rights would be in the child's best interest. N.C. Gen. Stat. § 7B-1110(a). The trial court may choose not to terminate parental rights if there is reasonable hope that within a reasonable amount of time the family will reunite, and the parent will be able to provide for the emotional and physical welfare of the children. In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001).
Here the trial court noted that all four children had adjusted well in their placements and appeared happy. Further, respondent had continued her pattern of involvement in relationships with men with a history of abuse, and had failed to demonstrate her ability to maintain stable employment and housing. Therefore, the trial court did not abuse its discretion in concluding that it was in the children's best interests that respondent's parental rights be terminated. Accordingly, we affirm the order of the trial court.
Affirmed.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).