IN RE: J.N.H., DOB: 2005
No. COA08-738
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
Juanita B. Allen for petitioner-appellee Cabarrus County Department of Social Services.
Pamela Newell Williams for appellee Guardian ad Litem.
Robin E. Strickland for respondent-appellant mother.
Betsy J. Wolfenden for respondent-appellant father.
HUNTER, Judge.
N.H. ("respondent-mother") and D.C. ("respondent-father) appeal from adjudication and disposition orders terminating their parental rights to J.N.H. ("the juvenile"), their biological minor child. After careful review, we affirm the trial court's orders terminating respondents' parental rights.
In February and March of 2006, the Cabarrus County Department of Social Services ("petitioner"), opened an investigation regarding three child protective services reports alleging the juvenile was neglected. At the time, the juvenile was eight months old and living with her maternal grandmother and respondent-mother. During the investigation into the reports, respondent-mother entered into a safety plan whereby she agreed to leave the juvenile in the care of the maternal grandmother, submit to drug screens, and refrain from arguing or fighting in the presence of the juvenile. Petitioner's investigation into the child protective services reports revealed: (1) respondent-mother abused crack cocaine; (2) the maternal grandmother abused alcohol and had recently attempted suicide; (3) respondent-mother and the maternal grandmother were evicted from their residence for non-payment of rent; (4) there were recent instances of domestic violence between respondent-mother and her boyfriend and respondent-mother and the maternal grandmother; (5) respondent-mother left the juvenile with others without making appropriate arrangements for the child's care; and (6) respondent-mother received a tax refund which she spent on drugs. Respondent-mother never submitted to a drug screening test.
Based on the results of its investigation, on 13 April 2006, petitioner filed a juvenile petition alleging the juvenile was neglected. On 19 April 2006, the trial court ordered petitioner to assume nonsecure custody of the juvenile, ordered a "kinship care assessment" of respondent-father's home, and granted respondents visitation with the juvenile. Petitioner placed the juvenile in a foster home. By order entered 26 April 2006, the trial court continued nonsecure custody with petitioner with weekly visitation for respondents.
On 9 June 2006, respondent-mother consented to an adjudication that the juvenile was a neglected child. Under the terms of the order, respondent-mother was required to submit to substance abuse, psychological treatment and domestic violence assessments; follow through with treatment recommendations; submit to random drug screens; abstain from using any impairing substances including alcohol and illegal drugs; attend a parenting course; pay child support; contact the social worker every other week; and obtain and maintain stable employment and suitable housing. Respondent-father also entered into a consent order in which he stipulated that he was in a position to provide a safe home for the juvenile. The juvenile was placed with respondent-father. The trial court ordered respondent-father to comply with a home study of his residence; submit to random drug screens; submit to alcohol, substance abuse and anger management assessments; complete parenting classes; maintain stable employment and housing; and contact the social worker weekly.
A review hearing was held on 28 November 2006 and subsequent permanency planning hearings were held on 23 April 2007, 17 May 2007, 15 November 2007, 20 December 2007, and 6 March 2008. Respondent-mother was incarcerated from 31 August 2006 to 28 September 2006. On 26 January 2007, respondentmother gave birth to E.J.H. and both she and the newborn tested positive for cocaine, benzodiazepines and barbiturates. Respondent-mother concedes that she made little progress on correcting the conditions which caused the juvenile's removal. Respondent-father initially made progress in addressing the terms of the order, completing forty hours of substance abuse treatment and his parenting classes. However, in February and March of 2007, respondent-father tested positive for drugs, including cocaine and THC, on three different occasions. Petitioner removed J.N.H. from respondent-father's home and returned the juvenile to foster care.
After the permanency planning hearing held 15 November 2007, the trial court found reunification efforts with respondents were futile and inconsistent with the juvenile's need for a safe and permanent home and changed the permanent plan for the juvenile to adoption. The trial court found that respondent-mother initially completed a substance abuse assessment but had not followed through with the recommendations; had not completed a second ordered substance abuse assessment; repeatedly refused to submit to drug screens, stating she would test positive for cocaine, "pain pills," and Xanax; failed to provide any proof of attendance of Narcotics Anonymous or Alcoholics Anonymous meetings; attended two parenting classes, but failed to complete the full course; had missed several visitations with the juvenile; showed little skills in parenting her children during visitation with them; had not paid child support; had not remained in contact with petitioner; and had not maintained stable housing. The trial court found that respondent-father had not attended his anger management group therapy since 14 August 2007; had not attended his substance abuse group therapy since 30 July 2007; had tested positive for cocaine on three occasions since July 2007 and had failed to submit to a drug screen in September 2007; and had initially maintained that he was testing positive for cocaine because he was taking weight lifting medications, but later admitted he had taken cocaine voluntarily because he was depressed.
On 24 January 2008, petitioner filed a motion in the cause to terminate respondents' parental rights to the juvenile. Petitioner alleged grounds existed to terminate respondents' parental rights to the juvenile in that respondents had: (1) neglected the juvenile as defined in N.C. Gen. Stat. § 7B-101(15) (2007); (2) failed, for a continuous period of six months next preceding the filing of the petition, to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so; and (3) willfully left the juvenile in foster care for more than twelve months without showing, to the satisfaction of the court, that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the juvenile. Petitioner's motion to terminate respondents' parental rights came on for an adjudication hearing at the 14 March 2008 session of Cabarrus County District Court. On 27 March 2008, the trial court entered separate orders concluding that grounds existed to terminate the parental rights of respondent-mother and respondent-father to the juvenile. The trial court found by clear, cogent, and convincing evidence that all three grounds as alleged by petitioner existed to terminate respondent-father's parental rights to the juvenile, and that grounds existed to terminate respondent-mother's parental rights to the juvenile in that she had neglected the juvenile and left the juvenile in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the juvenile.
The trial court held a disposition hearing on 27 and 28 March 2008 and entered orders on 10 April 2008 and 11 April 2008 terminating the parental rights of respondent-mother and respondent-father to the juvenile. During his testimony at the disposition hearing, respondent-father inquired about relinquishing his parental rights to the juvenile. Respondent-father relinquished his parental rights in favor of the foster parents that evening, but revoked the relinquishment on 9 April 2008. Respondent-mother filed notice of appeal from the adjudication and disposition orders on 15 April 2008. Respondent-father likewise filed notice of appeal from the adjudication and disposition orders on 17 April 2008.
We first address petitioner's "Motion to Deem Respondent Mother's Assignment of Errors 1-4 Abandoned." Respondent-mother initially asserted five assignments of error in the record on appeal. On 31 July 2008, respondent-mother filed with this Court a motion to amend the record on appeal by which she sought to withdraw her original assignments of error numbers 1-4 and replace them with two new assignments of error. This Court allowed respondent-mother's motion by order entered 7 August 2008 and respondent-mother's new assignments of error were incorporated into the record on appeal. Respondent-mother's first four original assignments of error were withdrawn and her fifth original assignment of error became her third assignment of error. As respondent-mother's first four original assignments of error have been withdrawn and are no longer before this Court, petitioner's motion to deem respondent-mother's first four original assignments of error is unnecessary and is dismissed.
Respondent-mother first argues the trial court erred in failing to either place the juvenile with a relative or make appropriate findings of fact and conclusions of law that placement with a relative was not in the juvenile's best interest. Respondent-mother contends the trial court erred in failing to consider her cousin, Ms. A., as a placement option in two non-secure custody orders entered 18 April and 26 April 2006 and five permanency planning orders entered 23 April 2007, 8 June 2007, 13 December 2007, 16 January 2008, and 20 March 2008. Respondent-mother has not appealed from these orders and there is no indication in the record before this Court that she intended to appeal from these orders at the time they were entered. These orders are not before this Court and this argument is dismissed.
Rule 3 of the North Carolina Rules of Appellate Procedure provides that, when appealing from a civil order or judgment, "[t]he notice of appeal required to be filed and served . . . shall designate the judgment or order from which appeal is taken and the court to which appeal is taken . . . ." N.C.R. App. P. 3(d). "Failure to comply with the requirements of Rule 3 of our Rules of Appellate Procedure requires the dismissal of [an] appeal as this rule is jurisdictional."In re I.S., 170 N.C. App. 78, 84, 611S.E.2d 467, 471 (2005) (citations omitted). Here, respondent-mother's notice of appeal states that appeal is from the order entered "March 14, 2008, finding grounds for the Termination of the Parental rights of the [respondent-mother] and from the Order entered . . . April 10, 2008, finding that it is in the best interests of the minor child that the parental rights of the [respondent-mother] be terminated . . . ." The record on appeal does not indicate respondent-mother had given notice of appeal from any previous order. Accordingly, this assignment of error is dismissed. See also In re O.C. & O.B., 171 N.C. App. 457, 463, 615 S.E.2d 391, 395 ("[m]otions in the cause and original petitions for termination of parental rights may be sustained irrespective of earlier juvenile court activity") (emphasis and citation omitted), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005); Wells v. Wells, 132 N.C. App. 401, 405-06, 512 S.E.2d 468, 471 (holding "where the intent to appeal an intermediate interlocutory order `is quite clear from the record,' such order may be reviewed upon appeal of a final judgment notwithstanding failure of said order to be `specifically mentioned in the notice of appeal'") (citation omitted), disc. review denied, 350 N.C. 599, 537 S.E.2d 495 (1999). We address respondent-mother's best interest arguments below.
Respondent-mother also argues the trial court's finding of fact number five, in the 10 April 2008 disposition order terminating her parental rights to the juvenile, is not based on competent evidence. We review an order terminating parental rights for "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005). The trial court's "findings of fact are conclusive if supported by clear and convincing competent evidence, even where the evidence might support contrary findings." In re H.L.A.D., 184 N.C. App. 381, 396-97, 646 S.E.2d 425, 436 (2007), affirmed per curiam, 362 N.C. 170, 655 S.E.2d 712 (2008).
The challenged finding of fact number five summarizes the interactions of Ms. A., a cousin of respondent-mother who resides in California, with the juvenile, petitioner, and the court proceedings below. The trial court found Ms. A. was aware the juvenile was in foster care and did not pursue placement of the juvenile with her because she wanted respondent-mother to have time to reunify with the juvenile and did not want to interfere with respondent-father. The trial court further found Ms. A. had never met the juvenile and was more interested in adopting E.J.H., but indicated she would consider adopting J.N.H. as well, once the juvenile was clear for adoption. Respondent-mother points to evidence that may support a finding contrary to the challenged finding of fact. However, after review of the record before this Court, we hold that the trial court's finding of fact number five is supported by clear and convincing competent evidence and is conclusive on appeal. This assignment of error is overruled.
Both respondent-mother and respondent-father argue the trial court erred in concluding it was in the best interest of J.N.H. to terminate the respondents' parental rights to the juvenile. Respondent-mother argues the trial court abused its discretion in terminating her parental rights instead of changing the juvenile's permanent plan to one of custody with a relative, her cousin Ms. A. Respondent-father argues the trial court abused its discretion in terminating his parental rights due to the strong filial bond he shares with the juvenile and positive visitations with the juvenile. We disagree.
After the trial court finds grounds exist to terminate parental rights, the trial court must consider the following six factors to determine, in its discretion, whether termination of the parent's rights is in the juvenile's best interest:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007). "'We review the trial court's decision to terminate parental rights for abuse of discretion.'" In re V.L.B., 168 N.C. App. 679, 684, 608 S.E.2d 787, 791 (quoting In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002)), disc. review denied, 359 N.C. 633, 614 S.E.2d 924 (2005). Further, respondent-mother has only challenged finding of fact number five of her disposition order on appeal and respondent-father has only brought forward and argued on appeal that the trial court erred in making findings of fact number six and ten in his disposition order. In finding of fact number six from the order terminating respondent-father's parental rights, the trial court acknowledged this bond, but found it was outweighed by other factors:
6. [Respondent-father] has a strong bond with [the juvenile]. He has remained in constant contact with the [foster] family. He is welcome in their home for visits with [the juvenile]. They plan to continue their relationship if [the juvenile] is adopted by the [foster] family. Despite his bond with [the juvenile], [respondent-father] has failed to demonstrate that he can remain drug free, continuing to test positive for drugs up to the termination hearing. As noted in the order which found that grounds existed to terminate [respondent-father's] parental rights, [respondent-father] had been living with his former girlfriend until recently. During the pendency of this case, he has not maintained suitable housing on his own. Currently, he does not have appropriate housing for the placement of [the juvenile]. [The juvenile] need[s] stability and structure in a safe and drug free environment that [respondent-father] cannot provide at this time.
In finding of fact number ten, the trial court found "[t]he Guardian ad Litem Program has conducted an independent investigation and the program supports the termination of [respondent-father's] parental rights." Our review of the record shows these findings of fact are supported by competent evidence and are binding on appeal. In re C.M., 183 N.C. App. 207, 212, 644S.E.2d 588, 593 (2007) ("[a] trial court's findings of fact are binding on appeal if the findings are supported by competent evidence in the record"); In re J.D.S., 170 N.C. App. 244, 251, 612 S.E.2d 350, 355 (holding the trial court's findings of fact were binding on this Court when no assignments of error were made to particular findings), cert. denied, 360 N.C. 64, 623 S.E.2d 584 (2005).
It is readily apparent from the trial court's disposition orders that the court considered all of the statutorily mandated factors in N.C. Gen. Stat. § 7B-1110 in determining it was in the best interest of the juvenile to terminate respondents' parental rights. The trial court found the juvenile has a close and affectionate bond with the foster family and the family maintains a relationship with the foster family of E.H.N., the juvenile's younger sibling. The trial court recognized the juvenile was, after adjusting to her re-placement in foster care, a normal two and one-half year old child and that the termination of respondents' parental rights would aid in the accomplishment of the juvenile's permanent plan. The juvenile has a strong bond with respondent-father, and the foster family plans to continue a relationship between the juvenile and the respondent-father if they are allowed to adopt the juvenile. Respondent-mother has no relationship with the juvenile and last visited the juvenile in September 2007.
In his argument to this Court, respondent father does not challenge the trial court's findings or conclusion that he continued to test positive for drugs or that he had not maintained stable housing. Respondent-father argues there were no allegations during the underlying proceedings that respondent-father neglected the juvenile and that his strong filial bond with the juvenile should have overridden all other factors in determining whether or not to terminate his parental rights. Given respondent-father's inability to address his continuing problems with drug use and inability to maintain stable employment and adequate housing, we cannot agree that the trial court abused its discretion in concluding it was in the best interests of the juvenile to terminate respondent-father's parental rights. This assignment of error is overruled, and respondent-father's remaining assignments of error set forth in the record on appeal, but not argued in his brief to this Court, are deemed abandoned. N.C.R. App. P. 28(b)(6).
Respondent-mother argues the trial court abused its discretion in terminating her parental rights and in not placing the juvenile with Ms. A., respondent-mother's cousin. Respondent-mother concedes there is no specific statutory requirement that a trial court must consider relatives at the best interests phase of a termination proceeding, but may do so in considering "[a]ny relevant consideration" under N.C. Gen. Stat. § 7B-1110(a)(6). It is clear from the trial court's order that the trial court gave much consideration to Ms. A. as a relative of the juvenile in deciding to terminate respondent-mother's parental rights. In light of the trial court's findings of fact regarding Ms. A.'s relationship with the juvenile, interactions with petitioner and the court, residence in California and the strong bond between the juvenile and respondent-father, we cannot say the trial court abused its discretion in not placing the juvenile with Ms. A. Similarly, we cannot conclude the trial court abused its discretion in terminating respondent-mother's parental rights. Respondent-mother failed to follow the recommendations of her substance abuse assessment or complete any substance abuse treatment, failed to maintain adequate housing, failed to maintain stable employment, did not complete her parenting classes, and had not visited with the juvenile since 5 September 2007. These assignments of error are overruled.
Affirmed.
Judges GEER and ARROWOOD concur.
Report per Rule 30(e).