IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-489

Filed 21 March 2023

Orange County, No. 19 JT 6

In the Matter of:

A.W.

Appeal by Respondent-Father from order entered 9 March 2022 by Judge Sherri T. Murrell in Orange County District Court. Heard in the Court of Appeals 8 March 2023.

> *Stephenson & Fleming, LLP, by Deana K. Fleming, for Petitioner-Appellee Orange County Department of Social Services.*
>
> *Winston & Strawn LLP, by Stacie C. Knight, for Appellee-Guardian ad Litem.*
>
> *Robert W. Ewing for Respondent-Appellant Father.*

COLLINS, Judge.

Respondent-Father appeals from the trial court's order terminating his parental rights to his child based upon neglect, dependency, and prior involuntary termination of parental rights. Father argues that there is no clear, cogent, and convincing evidence to support the trial court's findings that (1) the neglect experienced by the juvenile will repeat or continue if returned to Father's care and custody; (2) Father is incapable of providing for the proper care and supervision of the juvenile; and (3) Father lacks the ability or willingness to establish a safe home.

We affirm.

## I.    Factual Background and Procedural History

On 10 September 2018, the Orange County Department of Social Services ("DSS") received a report regarding a domestic violence incident that occurred on 8 September 2018. The report alleged that Father grabbed Mother by the hair, dragged her into the living room, and hit her in the back of the head in the presence of their juvenile son, Alan.[1] Father then picked up Alan and put him in his crib before throwing Mother against the wall, grabbing her throat, and strangling her until she lost consciousness. After the incident, Father sent text messages to Mother threatening to kill her and Alan. Father was charged with felony assault by strangulation, misdemeanor assault on a female, and misdemeanor communicating threats. After the incident, DSS assisted Mother in obtaining a Domestic Violence Protective Order ("DVPO") against Father. However, despite the DVPO in effect, Father continued to have contact with Mother.

On 23 January 2019, DSS filed a juvenile petition and obtained nonsecure custody of Alan due to the parents' continued contact despite the DVPO that was in effect. DSS placed Alan with the same family that had adopted his older sister after Father's parental rights were involuntarily terminated and Mother voluntarily relinquished her rights.

---

[1] Alan is a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 42.

Following a hearing, the trial court entered an order on 10 May 2019 adjudicating Alan neglected and ordering that custody remain with DSS. On 23 June 2021, the trial court entered a permanency planning review order changing the permanent plan from reunification to adoption with a secondary plan of guardianship. On 29 June 2021, DSS filed a petition to terminate Father's parental rights, alleging that (1) he neglected Alan; (2) he is incapable of providing for the proper care and supervision of Alan; and (3) his parental rights with respect to another child have previously been involuntarily terminated and he lacks the ability or willingness to establish a safe home.[2]

Hearings took place on 26 October 2021, 2 December 2021, 6 January 2022, and 31 January 2022, after which the trial court entered an order on 9 March 2022 terminating Father's parental rights. Father timely appealed the permanency planning order ceasing reunification efforts and the order terminating his parental rights.

## II. Discussion

Father argues that clear, cogent, and convincing evidence does not support the trial court's adjudication that grounds existed to terminate Father's rights.

## A. Standard of Review

"Termination of parental rights involves a two-stage process." *In re L.H.*, 210

---

[2] DSS also filed a petition to terminate Mother's parental rights to Alan, but it was dismissed after Mother voluntarily relinquished her rights.

N.C. App. 355, 362, 708 S.E.2d 191, 196 (2011) (citation omitted). "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under section 7B-1111(a) of our General Statutes." *In re D.C.*, 378 N.C. 556, 559, 862 S.E.2d 614, 616 (2021) (quotation marks and citation omitted). "If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the disposition phase, at which the trial court determines whether termination is in the best interests of the child." *In re H.N.D.*, 265 N.C. App. 10, 13, 827 S.E.2d 329, 332-33 (2019) (citation omitted). If, in its discretion, the trial court determines that it is in the child's best interests, the trial court may then terminate the parent's rights. *In re Howell*, 161 N.C. App. 650, 656, 589 S.E.2d 157, 161 (2003).

In reviewing a trial court's adjudication of grounds for termination, this Court must "determine whether the findings are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law" that one or more grounds for termination exist. *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quotation marks and citation omitted). "If clear, cogent, and convincing evidence supports a trial court's findings which support its determination as to the existence of a particular ground for termination of a respondent's parental rights, the resulting adjudication of the ground for termination will be affirmed." *In re J.R.F.*, 380 N.C. 43, 47, 867 S.E.2d 870, 874 (2022) (citation omitted). Unchallenged findings

are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citation omitted). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

We review a trial court's assessment of a juvenile's best interest at the disposition for abuse of discretion, reversing only where the decision is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019) (quotation marks and citation omitted). "The trial court's dispositional findings of fact are reviewed under a 'competent evidence' standard." *In re K.N.K.*, 374 N.C. 50, 57, 839 S.E.2d 735, 740 (2020) (citations omitted).

## B. Adjudication

### 1. Neglect

Father contends that "clear, cogent and convincing evidence does not support the trial court's ultimate findings and conclusions that Alan's neglect would be repeated in the future if he was returned to his father's care[.]"

A trial court may terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) if it determines that the parent has neglected the child within the meaning of N.C. Gen. Stat. § 7B-101(15). N.C. Gen. Stat. § 7B-1111(a)(1) (2022). A neglected juvenile is defined, in relevant part, as a juvenile "whose parent, guardian, custodian, or caretaker . . . [d]oes not provide proper care, supervision, or discipline"

or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15)(a), (e) (2022).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent.

*In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citation omitted). "When determining whether such future neglect is likely, the [trial] court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citation omitted).

Here, the trial court made the following relevant findings of fact regarding past neglect and a likelihood of future neglect:

> 33. Respondent parents have an on/off again relationship that began when Respondent mother was a minor marked by domestic violence due to Respondent father's documented mental health issues, including angry outbursts, and history of substance use, including but not limited to, alcohol abuse.

> 34. Respondent father had a history of mental health issues that include psychiatric hospitalizations, medical noncompliance, and substance abuse.

> . . . .

> 85. While Respondent father has acknowledged it was wrong for him to lose control, Respondent father has continued to place blame on Respondent mother for pushing him to a breaking point in which he lost self-control and physically assaulted her in the juvenile's

presence.

. . . .

111. Despite regular engagement [in] therapeutic services to address his mental health needs, including medication management, individual therapy, individual and group DBT, Respondent father continues to demonstrate difficulty regulating his emotions, becomes argumentative, agitated, and he is difficult to redirect.

112. On more than one occasion, Respondent father has sent multiple text messages and/or left voice mail messages ranting, using curse words, and making accusations against OCDSS staff, including while actively engaged in medication management, individual therapy, individual and group DBT . . . .

113. On 29 December 2020 and 4 January 2021, Respondent father became dysregulated and aggressive after visits with the juvenile. Respondent father raised his voice against the social worker and got physically closer to her in a threatening manner while his anger escalated.

. . . .

121. Respondent father continues to exhibit the inability to control and regulate his emotions.

122. In communication, including his own written correspondence, Respondent father often refers to the behaviors of the other party as the person that cause[s] him to negatively react in the situation.

123. Despite his Alcohol and Cannabis Use Disorder diagnoses, over the course of the case, Respondent father continued to use marijuana and alcohol contrary to recommendations regarding his mental health diagnoses and psychiatric medications.

124. Respondent father minimizes his substance use and identifies that he uses impairing substances in time of stress . . . .

125. Respondent father admitted use and tested positive for marijuana in drug screens during the underlying case in September 2019, December 2019, and January 2020.

126. Respondent father has acknowledged alcohol misuse in August 2020 and December 2020. Respondent father has not sustained sobriety which has been consistently recommended due to his mental health diagnoses.

127. On 11 August 2021, Respondent father was charged with driving while impaired, resisting a public officer, and reckless driving wanton disregard in Randolph County. These charges remain pending.

. . . .

132. It is likely that the neglect experienced by the juvenile in the care of Respondent father will repeat or continue if the juvenile is returned to Respondent father's care and custody. Specifically, this court finds the following facts:

> a. Findings made elsewhere in this order are incorporated as though fully set out here.
>
> b. Respondent father completed a Batterer's Intervention Program; however, he continues to minimize his role in domestic violence and places blame on Respondent mother for pushing him to his limits.
>
> c. Respondent father failed to abide by the terms of the DVPO while it was in place by having contact with Respondent mother.
>
> d. Respondent father had clandestine contact with Respondent mother when he was under court order of no contact and despite their well-documented history of domestic violence and engagement in recommended services.
>
> e. Despite engagement in consistent individual therapy, individual DBT, and group DBT, Respondent father continued to show emotional dysregulation which includes becoming angry and aggressive, argumentative, and escalated in a manner that is difficult to redirect.
>
> f. These behaviors subject the juvenile to the continued risk of physical, emotional, or mental impairment if he were in Respondent father's care

even if not directed at the juvenile.

g. Despite the role that alcohol played in the domestic violence incident on 8 September 2018 when Respondent father assaulted Respondent mother in the juvenile's presence, Respondent father has continued to use impairing substances, specifically alcohol and marijuana, as a coping mechanism for stress.

h. Respondent father's continued use of impairing substances creates an injurious environment for the juvenile if he were in his care and custody.

i. Respondent father has not established a safe home for the juvenile.

In making these findings of fact, the trial court considered testimony from Dr. Kristi Matala, the psychologist who evaluated Father; Emily Allen, the DSS worker assigned to this case; Nicole Roman, the Guardian ad Litem District Administrator; Connie Price, Alan's Guardian ad Litem; and Alan's foster mother. The trial court also considered Dr. Karin Yoch's 2017 psychological evaluation of Father; Dr. Matala's psychological evaluation of Father; Father's letter to the court; emails between Father and Alan's foster mother; and the Guardian ad Litem's report. Thus, there is clear, cogent, and convincing evidence in the record to support the trial court's findings of fact that the neglect experienced by Alan would repeat or continue if he was returned to Father's care and custody.

The trial court's findings of fact support its conclusions of law that Father neglected Alan, that there is a high likelihood of repetition of similar neglect if Alan remained in Father's care or custody, and that Alan would remain at substantial risk

of physical, mental, and/or emotional impairment in Respondent father's care and custody. *See In re K.Q.,* 381 N.C. 137, 146, 871 S.E.2d 500, 506 (2022) (holding that the trial court did not err by concluding that there was a likelihood of future neglect where the father continued to deny his role in the domestic violence, failed to acknowledge the effects that the domestic violence had on the child, and refused to accept any responsibility for the child's removal).

### 2. *Dependency*

Father contends that clear, cogent, and convincing evidence does not support the trial court's findings and conclusions that Father was incapable and unable to provide for Alan's proper care and supervision. Specifically, Father contends that "the trial court did not make the ultimate findings of fact on the issue of whether these conditions rendered him incapable or unable to parent his child." (emphasis omitted).

A trial court may terminate parental rights for dependency if it determines that "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (2022). Incapability may be the result of "substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile[.]" *Id.* A dependent juvenile has

no parent, guardian, or custodian to provide for their care or supervision and no appropriate alternative childcare arrangement.[3] N.C. Gen. Stat. § 7B-101(9) (2022).

Here, the trial court made the following relevant findings in determining that Father was incapable of providing for Alan's proper care and supervision, and that there was a reasonable probability that Father's incapability would continue for the foreseeable future:

> 136. To evaluate Respondent father's current psychological functioning related to the juvenile's case, he was referred for an updated psychological evaluation.
>
> 137. On 26 June 2019, Dr. Matala conducted an updated psychological evaluation of Respondent father.
>
> 138. While Dr. Matala reviewed and considered Dr. Yoch's prior psychological evaluation, she completed an independent evaluation which included a review of records, mental status examination, clinical interview, and psychological testing of Respondent father.
>
> . . . .
>
> 143. Respondent father acknowledged prior suicide attempts, five or six times, usually by overdosing on substances or medication.
>
> 144. Respondent father reported experiencing symptoms of mania, including quickly moving thoughts and constant physical movement. His report is consistent with observations of the professionals involved in this case, including pacing in visitation.
>
> 145. Respondent father acknowledged going nine days without sleeping as well as difficulty sleeping, concentrating, and controlling his thoughts.

---

[3] Father does not argue that the trial court failed to make findings of fact regarding the availability of alternative childcare arrangements.

. . . .

147. Respondent father acknowledged his diagnosis of borderline personality disorder, and that he was regularly engaged in individual therapy and medication management. Despite engagement in services, he was not able to articulate information from interventions or coping skills learned from services.

148. When describing the domestic violence incident against Respondent mother witnessed by the juvenile, he expressed no empathy for the juvenile despite his own exposure to domestic violence as a child.

149. Respondent father demonstrated a lack of self-control over his emotions and thoughts. He remained fixated on Respondent mother and continued to blame others for his actions.

. . . .

151. Despite engagement in services and treatment, Dr. Matala noted that Respondent father continued to exhibit maladaptive behaviors in functioning, including that he lacked empathy and blames others for his actions. Further, testing indicates severe psychological difficulties with possible psychotic thought process and distorted perceptions. Consequently, Respondent father requires long-term intensive treatment.

152. Dr. Matala diagnosed Respondent father with Bipolar Disorder with mixed features, Borderline Personality Disorder, Post-Traumatic Stress Disorder (PTSD), Alcohol Use Disorder, Cannabis Use Disorder, and Opioid Use Disorder in sustained remission.

153. . . . Additionally, use of alcohol and/or marijuana negatively impacts his mental health functioning.

. . . .

155. While Respondent father has engaged in medication management, individual therapy, and DBT individual and group therapy, he continues to demonstrate emotional dysregulation consistent with his persistent mental health diagnoses.

. . . .

157. Ultimately, Respondent father is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. § 7B-101, due to his persistent mental health diagnoses and associated maladaptive behaviors as set forth herein.

158. There is a reasonable probability that such incapability will continue for the foreseeable future due to the following:

> a. Findings made elsewhere in this order are incorporated as though fully set out here.
>
> b. Respondent father's diagnoses are persistent mental health conditions that require constant management through engagement in services.
>
> c. Respondent father has engaged in medication management and individual therapy that preceded the juvenile's birth which has not alleviated related symptoms.
>
> d. Respondent father has engaged in individual and group DBT therapy, and while he has shown improvement with emotional regulation during engagement in these services, he does not have the ability to maintain engagement in these services.
>
> e. Even with engagement in services, the behaviors associated with the conditions remain present, including the inability to manage anger which negatively impacts relationships and the juvenile's safety as demonstrated by domestic violence.

Based on the same evidence that supported the trial court's findings of fact concerning neglect, we determine that clear, cogent, and convincing evidence supports the trial court's findings that Father is incapable of providing for the proper care and supervision of Alan, and that there is a reasonable probability that the

incapability will continue for the foreseeable future.

These findings of fact support the trial court's conclusions of law that Father is incapable of providing for the proper care and supervision of Alan, and that such incapability "is the result of mental illness and substance use disorder[.]" *See In re A.L.L.*, 254 N.C. App. 252, 266-67, 802 S.E.2d 598, 608-09 (2017) (holding that the trial court did not err by concluding that a mother was incapable of caring for her children where she suffered from severe depression and PTSD and failed to follow recommendations for treatment, even though there was testimony that her mental health had improved).

### 3. *Prior Termination of Parental Rights*

Father contends that clear, cogent, and convincing evidence does not support the trial court's findings and conclusions that Father was unwilling to establish a safe home for Alan.

Under N.C. Gen. Stat. § 7B-1111(a)(9), a trial court may terminate parental rights if "[t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home." N.C. Gen. Stat. § 7B-1111(a)(9) (2022). "Termination under § 7B-1111(a)(9) thus necessitates findings regarding two separate elements: (1) involuntary termination of parental rights as to another child, and (2) inability or unwillingness to establish a safe home." *In re L.A.B.*, 178 N.C. App. 295, 299, 631 S.E.2d 61, 64 (2006). Safe home is defined

as "[a] home in which the juvenile is not at substantial risk of physical or emotional abuse or neglect." N.C. Gen. Stat. § 7B-101(19) (2022).

Father does not dispute that his parental rights were involuntarily terminated with respect to another child. Rather, Father argues that the record does not support a finding that he was unwilling to establish a safe home. However, the trial court made numerous findings relevant to its determination that Father was unable or unwilling to establish a safe home:

> 162. On 16 April 2018, Alamance County District Court, Juvenile Court Division, entered an Order to Terminate Parental Rights against Respondent father as to the juvenile . . . .
>
> . . . .
>
> 164. There are notable similarities between the Alamance County Termination of Parental Rights Order . . . and the findings of fact set forth herein. Summary examples include, but are not limited to the following:
>
> > a. Respondent father was engaged in medication management with Dr. Su of Carolina Behavioral Health.
> >
> > b. Respondent father was engaged in individual therapy with Sheryl Harper. It was acknowledged that he learned some anger management, parenting, and coping skills during sessions; however, Respondent father was not addressing the underlying issues as to why the juvenile was in agency custody.
> >
> > c. Respondent father did not adequately address his substance use disorder, and he did not demonstrate sobriety.
> >
> > d. Respondent father had a conflictual relationship with his social worker marked by difficulty in

communication.

> e. Respondent father was consistent and appropriate in supervised visitation . . . .

165. Respondent father lacks the ability or willingness to establish a safe home in which the juvenile is not at substantial risk of physical or emotional abuse or neglect. The juvenile would be at substantial risk of physical, mental, or emotional impairment if he were in the home of Respondent father. In support of this ultimate finding of fact, the court specifically finds as follows:

> a. Findings made elsewhere in this order are incorporated as though fully set out here.

> b. Despite engagement in the Batterer's Intervention Program, Respondent father does not recognize his role in domestic violence and shifts blame on partners.

> c. Respondent father has not abided by no contact orders in place and continued to maintain some level of contact or relationship with Respondent mother despite their documented history of domestic violence.

> d. Respondent father has engaged in therapeutic services, including medication management, individual therapy, and DBT individual and group therapy. Despite engagement in these services, Respondent father continued to have incidents of emotional dysregulation, including but not limited to aggression, compulsive texting, and difficulty in communication.

> e. Respondent father has not demonstrated sobriety. He continued to use marijuana and alcohol during the proceedings despite substance use disorder related to the substances.

Based on the same evidence that supported the trial court's findings of fact concerning neglect and dependency, we determine that clear, cogent, and convincing

evidence in the record supports the trial court's findings of fact that Father lacks the ability or willingness to establish a safe home for Alan.

These findings of fact support the trial court's conclusions of law that Father's parental rights with respect to another child have been terminated involuntarily, and that Father lacks the ability or willingness to establish a safe home. *See In re V.L.B.,* 168 N.C. App. 679, 684, 608 S.E.2d 787, 791 (2005) (holding that the trial court did not err by concluding that respondents lacked the ability to establish a safe home where, inter alia, the mother's psychological evaluation revealed that she suffered from "depression, high levels of anxiety and tension, a low frustration tolerance, poor impulse control, and anger management difficulties").

## III.    Conclusion

The trial court did not err by concluding that grounds existed to terminate Father's parental rights based upon neglect, dependency, and prior involuntary termination of parental rights.    Father does not challenge the trial court's dispositional determination that termination was in the child's best interests. Accordingly, we affirm the trial court's order terminating Father's parental rights.

AFFIRMED.

Judges GRIFFIN and STADING concur.