IN THE MATTER OF DYRON CARR

No. 9314DC914

(Filed 20 September 1994)

1. **Parent and Child § 121 (NCI4th)— termination of parental rights—two-stage hearing—two stages improperly combined by court**

   In a proceeding for termination of parental rights, the trial court erred in improperly combining the two stages of the termination hearing by exercising its discretion during the adjudicatory stage instead of in the dispositional stage, since N.C.G.S. §§ 7A-289.30 and 7A-289.31 provide that the court exercises its discretion in the dispositional stage only after the court has found that there is clear and convincing evidence of one of the statutory grounds for terminating parental rights during the adjudicatory stage.

   **Am Jur 2d, Parent and Child §§ 7, 11.**

2. **Parent and Child § 125 (NCI4th)— termination of parental rights—failure to consider expert testimony—no error**

   In a proceeding for termination of parental rights, the trial court did not err in not allowing the guardian ad litem's expert witness to testify regarding the mother's mental health and capacity to parent her minor child, since the witness was only qualified

IN RE CARR

[116 N.C. App. 403 (1994)]

as an expert in clinical social work, and there was no evidence that she was an expert in mental health issues.

**Am Jur 2d, Parent and Child §§ 33, 385, 386.**

**Admissibility of social worker's expert testimony on child custody issues. 1 ALR4th 837.**

Appeal by appellant Guardian Ad Litem from order entered 20 July 1993 by Judge William Y. Manson in Durham County District Court. Heard in the Court of Appeals 23 August 1994.

This is an appeal from an order denying a petition to terminate the parental rights of a mother with respect to her minor child.

On 4 April 1989, Dyron Carr (Dyron), was admitted to Duke University Medical Center (Duke) for evaluation and treatment of seizures. Dyron was one month old at the time. Dyron's eighteen-year-old mother, Tammy Yarborough (appellee), told hospital personnel that she had noticed Dyron shaking and trembling for periods of approximately five minutes at a time during the previous night and that she had finally decided to take him to the emergency room when his eyes rolled back in his head.

Appellee was living with her boyfriend, Tyrone Kelly (Tyrone), and Dyron at the time Dyron was admitted to the hospital. Dyron's biological father, Richard Carr, had little contact with Dyron. Tyrone and appellee had conflicting stories as to exactly how and when Dyron was hurt. Appellee told hospital personnel that Dyron had bruised his face by hitting the frame of a sofa bed approximately one week prior to his admission to Duke. Tyrone claimed that Dyron had wedged his head between the frame and the bed and that the seizures began on the afternoon as opposed to the night before appellee took Dyron to the hospital. After Dyron was in the hospital for a few days, doctors determined that he had suffered a lineal skull fracture and that the injury was a result of trauma. The hospital referred the case to the Duke Child Protection Team which determined that Dyron might be an abused and neglected child. The case was then referred to DSS. Duke discharged Dyron on 18 April 1989 and DSS placed him in foster care.

After a 15 June 1989 hearing, the trial court found that the delay in appellee's taking Dyron to the hospital "led to medical neglect and a lack of proper care and supervision." Although the court adjudicated Dyron a neglected juvenile, the court returned physical custody

IN RE CARR

[116 N.C. App. 403 (1994)]

of Dyron to appellee with DSS overseeing the living situation. In its order, the court stated that it would hold a further hearing on 2 August 1989 to determine whether Dyron was an abused child. At the August hearing, DSS recommended that Tyrone Kelly have no contact with Dyron and that appellee attend parenting classes. The court enjoined Tyrone from seeing Dyron and ordered appellee to take all steps to assure that Tyrone would not be in the presence of Dyron. The court then adjudicated Dyron as an abused juvenile.

On 10 August 1989, Duke Hospital called DSS and reported that Dyron had been admitted for being lethargic. The hospital discovered Dalamane in his system, although appellee insisted that she did not know how the drug could have gotten into his system. During the course of a subsequent investigation, DSS discovered that appellee had continued to live with Tyrone in violation of the court order directing her to stay away from him. The court ordered appellee to attend parenting classes and DSS placed Dyron in foster care.

At the April 1990 hearing, the court again ordered appellee to attend parenting classes, to undergo a substance abuse evaluation and a psychological evaluation, and to follow any other DSS recommendations. DSS supervised visitation between appellee and Dyron, but there were several months when appellee did not attend scheduled visitations. In August 1990, DSS filed a petition to terminate appellee's parental rights because appellee had not attended parenting classes, had not obtained a substance abuse evaluation or psychological evaluation, and had not visited with Dyron since the preceding April.

After the August 1990 petition and after the court once again ordered appellee to attend parenting classes and undergo psychological and substance abuse evaluations, appellee made some improvements. Therefore, DSS voluntarily dismissed the petition to terminate appellee's parental rights in July 1991. The original Guardian Ad Litem (Guardian) disagreed with DSS's recommendation to continue to seek reunification between appellee and Dyron. The Guardian pointed out that Dyron had been in foster care for twenty-two months, he was thriving in that environment with his foster mother, and appellee had only expressed a sincere interest in improving her condition in the last two months of that twenty-two month period. Appellee had no stable living situation or employment and she had undergone several miscarriages. The Guardian favored termination but a new Guardian Ad Litem was appointed. The new Guardian did

not have standing to petition for termination because he had not served for one continuous year as required by G.S. 7A-289.24(6).

At the February 1992 hearing, the new Guardian supported the foster mother's motion to intervene and adopt Dyron. Dyron had been with his foster mother for most of his life and had become an integral part of the foster mother's family. Despite the strong bond between the foster mother and Dyron, the court denied the foster mother's motion. DSS filed another petition to terminate appellee's parental rights with respect to Dyron.

In July 1993, the trial court declined to terminate appellee's parental rights. The court stated that, although appellee had made foolish decisions and there was evidence of neglect, appellee was young. The court also remarked that appellee's fiance, Edward Weatherspoon, who was the father of appellee's infant son, seemed to be a stable and responsible person. The court stated that it was not willing to find that there was clear and convincing evidence to support any of the statutory grounds for terminating appellee's parental rights. Appellant Guardian Ad Litem appeals.

*Jane Elizabeth Volland for appellant Guardian Ad Litem.*

*Durham County Attorney's Office, by Assistant County Attorney Wendy Sotolongo, for appellant Durham County Department of Social Services. (No brief was filed on behalf of Durham County Department of Social Services.)*

*Eagen, Eagen & Ellinger, by Jeffrey R. Ellinger, for appellee Tammy Yarborough.*

EAGLES, Judge.

Appellant Guardian Ad Litem (appellant) brings forth several assignments of error. After careful review, we reverse and remand.

I.

[1] Appellant first argues that the trial court erred by not properly following the two-stage process set out in G.S. 7A-289.30 and 7A-289.31 for terminating parental rights. G.S. 7A-289.30 provides that in the adjudicatory stage, the petitioner must prove by clear and convincing evidence that one or more of the statutory grounds for terminating parental rights exists. *Matter of Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). Once the petitioner meets this burden, G.S. 7A-289.31 provides that the trial court move to the disposi-

tional stage where the court has the discretion to terminate parental rights. *Montgomery*, 311 N.C. at 110, 316 S.E.2d at 252. Because the decision is discretionary, the trial court can refuse to terminate parental rights even when the petitioner has proven its case by clear and convincing evidence. Although there are two separate stages involved in a termination of parental rights proceeding, the court does not have to conduct two separate hearings. *Matter of White*, 81 N.C. App. 82, 344 S.E.2d 36, *cert. denied*, 318 N.C. 283, 347 S.E.2d 470 (1986).

Appellant contends that the trial court erred in this case because the trial court did not fulfill its duties in the adjudicatory stage before proceeding to the dispositional stage. Appellant asserts that the trial court used its own discretion in the adjudicatory stage, thus improperly combining the two stages into one. Appellant points to the court's language to support its assertion that the trial court improperly combined the two stages:

[T]he Court, at this time, is not willing to conclude or find that there is clear, cogent and convincing evidence that the mother's parental rights should be terminated, but that the matter should be continued with a new plan of visitation with the mother and child after she becomes married to Mr. Weatherspoon.

We agree with appellant that this language shows that the trial court improperly combined the two stages of the termination hearing. By stating that it was "not willing to conclude" that there was clear and convincing evidence, the trial court showed that it was improperly exercising its discretion in the adjudicatory stage. G.S. 7A-289.30 and 7A-289.31 provide that the court exercises its discretion in the dispositional stage only **after** the court has found that there is clear and convincing evidence of one of the statutory grounds for terminating parental rights during the adjudicatory stage. Accordingly, we reverse the trial court's decision and remand for a rehearing on the termination of parental rights petition.

## II.

Appellant also argues that the trial court erred by not terminating the parental rights of appellee because it was in the best interest of Dyron for the court to terminate appellee's rights. Here, we do not address appellant's assignment of error because we have already determined that the trial court improperly omitted making an adjudication during the first stage of the termination proceeding.

### III.

**[2]** Finally, appellant contends that the trial court erred by not allowing appellant's expert witness Susan Sweeney to testify regarding appellee's mental health and appellee's capacity to parent her minor child, Dyron. G.S. 8C-702 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." North Carolina courts "construe this rule to admit expert testimony when it will assist the [factfinder] 'in drawing certain inferences from the facts, and the expert is better qualified than the [factfinder] to draw such inferences.' " *North Carolina v. Parks*, 96 N.C. App. 589, 591, 386 S.E.2d 748, 750 (1989) (citing *State v. Anderson*, 322 N.C. 22, 366 S.E.2d 459 (1988), *cert. denied*, 488 U.S. 975, 102 L.Ed.2d 548 (1988)). The trial court has wide discretion in applying this rule and will only be reversed for an abuse of discretion. *Id.*

Here, the trial court said that Ms. Sweeney qualified as an expert witness in clinical social work, specifically dealing with adolescents. However, the court would not allow her to testify concerning her opinion of appellee's mental status and how appellee would be prepared to take care of Dyron if the court returned him to her care. Our Supreme Court has stated that in determining the best interest of the child, the trial court should hear and consider any evidence which is competent, relevant, and is not cumulative. *Matter of Shue*, 311 N.C. 586, 598, 319 S.E.2d 567, 574 (1984). Appellant asserts that Ms. Sweeney's testimony regarding the mental status of the appellee would have assisted the trial court in making an informed decision and that, in light of *Shue*, the trial court erred in excluding her testimony on this subject. While Ms. Sweeney's testimony may have been enlightening, Ms. Sweeney was only qualified as an expert in clinical social work. There is no evidence here that she was an expert in mental health issues. Therefore, the trial court did not err in excluding her testimony concerning appellee's mental status.

Reversed and remanded for rehearing on the termination of parental rights hearing.

Judges COZORT and LEWIS concur.