IN THE MATTER OF: DESIREE NATASHA FLETCHER

No. COA01-171

(Filed 2 January 2002)

**1. Termination of Parental Rights— standard—typographical error**

The trial court applied the proper standard of proof in a termination of parental rights action where the court's order referred to "clear cogent and evidence." The intent of the court to apply the clear and convincing standard is apparent and the omission of "convincing" was most likely a typographical error.

IN RE FLETCHER

[148 N.C. App. 228 (2002)]

## 2. Termination of Parental Rights— efforts to correct problems—insufficient

The trial court did not err by terminating respondent-mother's parental rights where she had made efforts to correct the conditions which led to her child's removal, but the evidence supports the trial court's determination that her progress was insufficient.

## 3. Termination of Parental Rights— progress by father—inability to protect child from mother

The trial court's findings of fact supporting the termination of a father's parental rights were not supported by clear and convincing evidence where he made reasonable progress and was cooperative, completed all of the required classes and therapy, and visited with the child. The crux of the termination appears to be the father's inability to protect his child from his wife, the child's mother, who is a chronic psychiatric patient with diagnosed psychosis and paranoid personality disorder. The record fails to show clear and convincing evidence that the father was unable or unwilling to protect his child from his wife and does not reflect whether he made the decision to remain with his wife rather than preserve his parental rights.

Appeal by respondent from order entered 17 March 2000 by Judge James W. Morgan in District Court, Lincoln County. Heard in the Court of Appeals 7 November 2001.

*Rebecca J. Pomeroy attorney for Lincoln County Department of Social Services, for petitioner-appellee.*

*Brenda S. McLain for respondent-appellants.*

*Charles E. Wilson, Jr. and Katherine Haen, guardians ad litem.*

WYNN, Judge.

Following our review of this termination of parental rights order, we affirm as to Karan Fletcher but reverse as to David Fletcher.

On 2 May 1997, Lincoln County Department of Social Services filed a petition alleging neglect by the Fletchers of their ten-month-old child. The Department of Social Services alleged that Ms. Fletcher's mental and physical condition caused limitations on her ability to properly care for the child and that Mr. Fletcher was

unable to provide a safe environment for the child. After a hearing, the trial court adjudicated the child to be neglected.

A disposition hearing followed in which the trial court ordered that the Fletchers undergo psychological evaluations, follow recommendations, and complete parenting classes.

On 24 February 1999, the trial court conducted a review and permanency hearing and ordered that reunification efforts be ceased with Ms. Fletcher and that Mr. Fletcher present a detailed plan of care to the court. On 21 July 1999, the trial court held a continued permanency planning hearing and found that Ms. Fletcher continued to make no progress and that Mr. Fletcher had not prepared a detailed plan as ordered by the court. Thereafter, Lincoln County Department of Social Services petitioned to terminate their parental rights; after a hearing, the trial court found that:

3. Petitioner filed a petition on May 2, 1997, alleging the minor child was neglected. Said child was adjudicated to be neglected at a hearing held May 19, 1997 due to the mother's mental and physical condition causing limitations in the mother's ability to properly care for the child and the father not being able to provide a safe environment for the child.

4. Following said adjudication the respondents were directed, among other things, to: undergo psychological evaluations and follow any recommendations; attend and complete parenting classes; and be allowed visitation with the child.

5. A review was held in the matter on November 10, 1997 at which the Court found that the respondents: had received psychological evaluation; had completed parenting classes; had signed a release regarding medical records; and had participated in visitation with the child. The Court found further that the respondents had not followed the recommendations made following the psychological evaluation.

6. Following said review hearing the Court directed: that visitation continue no less than bi-weekly and that changes in the visitation should be based upon the parents' response to treatment recommended by Dr. William Varley; that the mother receive psychiatric treatment beginning with an evaluation by a trained psychiatrist if said psychiatrist deems necessary; and that David Fletcher receive extensive personal counseling, further assess-

ment of his substance use, patterns, and ongoing evaluation for depression.

7. A review hearing was held May 27, 1998 at the conclusion of which the Court entered an order directing that the counseling previously ordered for the respondents be continued and that the petitioner was to assist with transportation for the Respondents and amending the visitation schedule as necessary for the Respondents' work schedule.

8. A review hearing was held August 19, 1998 at which the Court found that the Respondents had developed problems with the Department of Social Services' Social Worker assigned to their case that caused the Respondents difficulty in their reunifications efforts. The Court deemed it necessary to take the "extraordinary step" of directing that a new social worker be assigned to the case to attempt to succeed at reunification efforts. The court also ordered that medical records be obtained to assist their psychiatrist with his evaluation and treatment of the mother.

9. A review and permanency planning hearing was held February 24, 1999 at which the Court found that the respondent mother had been evaluated by Dr. Soong Lee of the Lincoln Counseling Center. The court further found that the respondent mother: was defensive and uncooperative with the evaluation; that she denied having any problems; that she was not making progress in treatment; and was not motivated for treatment. The Court further found that the respondent father intended to develop a plan of care for the child. The Court also found that the respondent mother was making no progress and insufficient efforts toward progress in correcting the conditions that led to the child's removal from the respondents' home. The Court ordered that reunification efforts be ceased with the mother and that the father present a detailed plan of care to the court by the May, 1999 court date. Said order also directed that the father have a separate residence from the mother. The findings in said order did not indicate that a separate residence was required.

10. The continued permanency planning hearing was held May 26, 1999. The Court found that the mother had continued to make no progress toward correcting the conditions that led to the child being removed from the respondents' home. The court further found that the father had been requested on numerous occasions to prepare a detailed plan of care that would provide a safe and

IN RE FLETCHER

[148 N.C. App. 228 (2002)]

suitable home for the minor child. The father to date had only prepared a non-detailed outline a plan of a care for the child.

11. The mother was seen by Dr. William H. Varley on five occasions between July 9, 1997 and September 8, 1997 for the purpose of a psychological evaluation. Dr. Varley found that the mother suffered from psychological problems that would preclude the mother from being able to provide effective parenting. He recommended that the mother undergo a prolonged period of psychiatric treatment to address these problems. The Court adopts Dr. Varley's findings as its own.

12. The mother was seen by Dr. Soong Lee for further evaluation and treatment between June 26, 1998 and October 1, 1998. Dr. Lee found that she was not motivated for treatment and that it was unlikely that she would make any significant progress with the court ordered therapy. The court adopts Dr. Lee's findings as its own.

13. The parties were allowed significant and substantial supervised visitation with the minor child. During many of the visits the mother spent a portion of the time being hostile with the Social Workers and demonstrated poor parenting skills with the child and a lack of closeness with the child. The father presented much more closeness with the child and appropriate parenting skills.

14. The father never prepared a detailed plan of care for the child that would provide a safe and suitable home and appropriate day care.

Based on these findings, the trial court concluded that,

The mother and father have willfully left the minor in foster care for more than twelve months without a showing to the satisfaction of the Court that reasonable progress under the circumstances was made in correcting the conditions that led to the child's removal in accordance with NCGS 7B-1111(2).[1]

---

1. N.C. Gen. Stat. § 7B-1111(2) (1999) provides for termination of parental rights upon a showing that:

The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

**IN RE FLETCHER**

[148 N.C. App. 228 (2002)]

As to Ms. Fletcher, the trial court further found that,

> The mother is incapable of providing for the proper care and supervision of the minor child due to mental illness such that the child is a dependent child in accordance with NCGS 7B-1111(6).[2]

Having found the existence of at least one ground for termination under N.C. Gen. Stat. § 7B-1111, the trial court concluded that the Fletchers' parental rights should be terminated, and that the best interest of the minor child did not require that their parental rights not be terminated. Accordingly, the trial court terminated the parental rights of the Fletchers by order dated 17 March 2000. From that Order, the Fletchers appeal.

In North Carolina, Chapter 7B sets forth the procedural requirements for the termination of parental rights; it requires that the trial court make a two stage-inquiry. *See* N.C. Gen. Stat. § 7B-1110 (1999). First, in the adjudicatory stage, the trial court must determine whether the evidence clearly and convincingly establishes at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7B-1111. *See In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). Second, if at least one ground for termination is established at the adjudication stage, the matter proceeds to the dispositional stage where the trial court,

> shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.

N.C. Gen. Stat. § 7B-1110 (1999); *See In re Carr*, 116 N.C. App. 403, 407, 448 S.E.2d 299, 302 (1994) (holding that the court may exercise its discretion in the dispositional stage only after the court has found that there is clear and convincing evidence of one of the statutory grounds for terminating parent rights).

**[1]** Preliminarily, we summarily dispose of the contention of both parents that the trial court failed to apply the proper standard of

---

2. N.C. Gen. Stat. § 7B-1111(6) (1999) provides for termination of parental rights upon a showing that:

> [T]he parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition.

proof under N.C. Gen. Stat. § 7B-1111(b) ("The burden in such proceedings shall be upon the petitioner or movant to prove the facts justifying such termination by clear and convincing evidence"); *see In re Church*, 136 N.C. App. 654, 657, 525 S.E.2d 478, 480 (2000) ("Although the termination statute does not specifically require the trial court to affirmatively state in its order terminating parental rights that the allegations of the petition were proved by clear and convincing evidence, without such an affirmative statement the appellate court is unable to determine if the proper standard of proof was utilized") (citation omitted); *see also In re Lambert-Stowers*, 146 N.C. App. 438, 552 S.E.2d 278 (2001).

The trial court's Order in this case states, "based upon the foregoing findings the Court concludes by clear cogent and evidence that . . . ." The respondents argue that the omission of the word "convincing" in the order indicates that the trial court did not apply the proper standard. We, however, hold that under the facts of this case, notwithstanding the omission of the word "convincing," the intent of the trial court to apply the "clear and convincing" standard is apparent. Indeed, the omission of the word "convincing" was most likely a typographical error. Thus, this assignment of error is rejected.

## I. Termination of Ms. Fletcher's Parental Rights

[2] As to Ms. Fletcher, the record shows that she was ordered to undergo a psychological evaluation, follow all recommendations from the psychological evaluation, complete parenting classes, sign medical release documents, and attend Department of Social Services visitations with her child.

At the termination proceeding, Dr. Soong Lee, a psychiatrist, testified regarding his evaluation of Ms. Fletcher. Based on his testimony, the court found as a fact that she was defensive and not very cooperative during the evaluation. Dr. Lee documented Ms. Fletcher's long-standing mental illnesses and her inability to interact with her child. He detailed her non-cooperative desire to reunite with her child and the detrimental impact that she had on her child. He opined that Ms. Fletcher should not be given custody of her child and that supervised visits between her and the child could be detrimental to the child. He recommended that no interaction between Ms. Fletcher and the child take place.

Dr. William Varley, a psychologist, also testified at the termination of parental rights hearing regarding the psychological evaluation he

IN RE FLETCHER

[148 N.C. App. 228 (2002)]

completed on Ms. Fletcher. He stated that "she did not accept any responsibility or blame for any of her circumstances or any of the decisions that were made about her child." Dr. Varley also commented that he would recommend that contact between Ms. Fletcher and her child occur with supervision and monitoring.

Stephanie Hodges, a social worker for Lincoln County Department of Social Services, testified at the termination of parental rights hearing. She discussed Ms. Fletcher's inability after two years to parent her child and her aggressive nature. Ms. Hodges presented sixteen volumes of history to the court regarding Ms. Fletcher's two older children who remain in foster care in South Carolina and discussed the court's decision not to allow Ms. Fletcher to visit the boys. Ms. Hodges further testified about all of the efforts made by the Department of Social Services to reunify Ms. Fletcher with her child including transportation to and from the visits; money spent for her medical, psychological needs, parenting classes; and referrals to all of the services. Ms. Hodges testified that during numerous visits with her child, Ms. Fletcher did not interact with her child and would often seem more interested in the things in the room than her child. She also observed Ms. Fletcher hit and yell at the child.

The *Guardian ad Litem*, Dorris Hoyle, also testified about the supervised visits. She commented on the lack of affection between Ms. Fletcher and her child and that she observed Ms. Fletcher slap the child. She concluded her testimony by stating that it was in the best interest of the child for the court to terminate her parental rights.

We find that the actions and inactions of Ms. Fletcher rise to a level of willfully leaving her child in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting the conditions that led to the child's removal under N.C. Gen. Stat. § 7B-1111(a)(2). To uphold the trial court's order, we must find that the mother's failure was willful which is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. *See In re McMillon*, 143 N.C. App. 402, 546 S.E.2d 169, *disc. review denied*, 554 S.E.2d 341 (2001). A finding of willfulness does not require a showing of fault by the parent. *See In re Bishop*, 92 N.C. App. at 669, 375 S.E.2d at 681.

In the present case, even though the respondent mother made some efforts, the evidence supports the trial court's determination

that she did not make sufficient progress in correcting conditions that led to the child's removal. We therefore conclude that the findings of the trial court under N.C. Gen. Stat. § 7B-1111(a)(2) in terminating Ms. Fletcher's parental rights were supported by clear and convincing evidence. We further conclude that the record shows no abuse of discretion by the trial court in determining that it would be in the best interest and welfare of the minor child for the parental rights of Ms. Fletcher to be terminated under N.C. Gen. Stat. § 7B-1111. *See In re Nolan*, 117 N.C. App. 693, 700, 453 S.E.2d 220 (1995) (holding that a finding of any one of the statutory grounds for termination, will support an order for termination). Therefore, we uphold the decision of the trial court terminating Ms. Fletcher's parental rights.

## II.  Termination of Mr. Fletcher's Parental Rights

[3] As to Mr. Fletcher, the record is unclear as to the evidence that the trial court relied upon to determine that he willfully left the minor child in foster care for more than twelve months without making reasonable progress in correcting those conditions that led to the removal of the child from his home. The record shows that Mr. Fletcher attended bi-weekly visits with the child, completed psychological evaluations and treatment, completed parenting classes and maintained contact with the Department of Social Services.

Stephanie Hodges, the social worker, testified at the termination proceedings that the trial court ordered that Mr. Fletcher develop a plan. The plan was to show how Mr. Fletcher could adequately provide for the needs, safety and welfare of his child, including emergency and contingency plans and daycare, residential care and budgeting. Mr. Fletcher testified that he had contacted several daycare centers but that they did not have any openings. He met twice with Cynthia Vinson at Gaston Community Action to work on budgeting; he also met with Lori Burgess from Child Care Coordinators, who showed him films and discussed with him how to care for the minor child. The record shows that Mr. Fletcher interacted well with his daughter and he was by far the more active parent during visitations with his daughter. Greg Shugar, a mental health clinician, testified that he had fifteen appointments with Mr. Fletcher. Mr. Shugar also testified that although Mr. Fletcher was angry with others, he was able to accept responsibility and develop plans to resolve problems. He did not find anything in his treatment or sessions with Mr. Fletcher that would indicate his unfitness to be a parent. His drug assessment found that treatment was not needed.

**IN RE FLETCHER**

[148 N.C. App. 228 (2002)]

This evidence does not support the conclusion that Mr. Fletcher willfully abandoned his minor child. Here, the record shows that Mr. Fletcher made reasonable progress; he was cooperative, completed all required parenting classes, mental health therapy and visited with the child. Therefore, we must conclude that the record fails to show clear and convincing evidence that Mr. Fletcher willfully left his child in foster care without making reasonable progress.

Indeed, the issue presented by his appeal presents a more complex determination than that presented in the appeal of Ms. Fletcher. The crux of the trial court's decision to terminate Mr. Fletcher's parental rights appears to be premised on his inability to protect his child from the child's mother and his wife, Ms. Fletcher. The record shows that Ms. Fletcher is a chronic psychiatric patient with diagnosed abnormalities of psychosis and paranoid personality disorder. According to Dr. Lee, "she can be angry easily, explosive easily, and cannot control feelings well." Indisputably, she has a profound inability to control her emotions and social interactions. Moreover, she is under prescribed medications such as Hadol (to control psychotic symptoms) and medications to control a seizure disorder. As noted earlier, the testimony of the experts at trial documents that even supervised visits with Ms. Fletcher could be detrimental to her daughter and that no interaction should occur between Ms. Fletcher and her daughter.

In light of the manifest problems that Ms. Fletcher presented in interacting with her child, the trial court directed Mr. Fletcher to develop a plan that would detail how he would care for the child to the exclusion of Ms. Fletcher. In essence, the court directed Mr. Fletcher to set out a plan that would demonstrate how he could exercise his parental rights and responsibilities in harmony with his role as a husband to Ms. Fletcher, the mother of the child. In court, Mr. Fletcher stated that he realized his wife had a problem and that he was in the process of developing a plan of care that would not include Ms. Fletcher. He stated that if necessary, he would leave his wife to obtain placement of his child.

It appears from the record that Mr. Fletcher faced a difficult decision of choosing between living with his wife or his child.[3]

---

3. The parties do not adequately confront this issue in their brief on appeal and for that reason, we do not address the inherent and significant public policy issues arising from requiring an individual to choose between fulfilling and maintaining marital rights and responsibilities, and maintaining parental rights over the couple's child. Nonetheless, the scope of this dilemma is a ripe subject for consideration by our legislature.

Specifically, the records fails to show clear and convincing evidence that Mr. Fletcher was unable or unwilling to protect his child from Ms. Fletcher. The record also does not reflect whether Mr. Fletcher made the decision to remain with his wife rather than preserve his parental rights. In short, the record does not contain sufficient evidence from which we can discern that Mr. Fletcher's conduct "manifest[ed] a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 252, 485 S.E.2d 612, 617 (1997). "While we recognize that the trial court is perhaps in the best position to evaluate the evidence in these very sensitive cases and are mindful of the need for permanency for young children; we believe that the law requires compelling evidence to terminate parental rights." *In re Nesbitt*, 147 N.C. App. 349, —— S.E.2d —— (Dec. 4, 2001) (No. COA 00-1168). Therefore, we do not find that the findings of fact are supported by clear and convincing evidence to establish grounds for terminating Mr. Fletcher's parental rights under N.C. Gen. Stat. § 7B-1111(a)(2).

Our determination that Mr. Fletcher's parental rights should not be terminated under this Order, however, returns Mr. Fletcher only to the status that he enjoyed before the termination of his rights; the determination of whether he should be accorded supervised visits and other opportunities to reunite with his child remains within the province of the trial court.

In sum, we affirm the termination of Ms. Fletcher's parental rights and reverse the termination of Mr. Fletcher's parental rights.

Affirmed in part and reversed in part.

Judges WALKER and THOMAS concur.