IN THE SUPREME COURT OF NORTH CAROLINA

No. 413A19

Filed 20 November 2020

IN THE MATTER OF: E.C., C.C., N.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 8 August 2019 by Judge David H. Strickland in District Court, Mecklenburg County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Keith S. Smith, Senior Associate County Attorney, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services Division.*

*Ward and Smith, P.A., by Mary V. Cavanagh, for appellee Guardian ad Litem.*

*J. Thomas Diepenbrock for respondent-appellant mother.*

HUDSON, Justice.

Respondent, the mother of minor children E.C. (Ellen)[1], C.C. (Cathy), and N.C. (Nancy), appeals from the trial court's order terminating her parental rights. Because we hold that the unchallenged findings of fact support the trial court's conclusion that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(2) for willfully leaving her children in foster care or a placement outside of

---

[1] Pseudonyms are used to protect the juveniles' identities and for ease of reading.

the home for more than twelve months without making reasonable progress to correct the conditions that led to their removal, we affirm.

On 29 October 2015, the Mecklenburg County Department of Social Services, Youth and Family Services Division (YFS), obtained nonsecure custody of Ellen, and Cathy and filed a juvenile petition alleging that they were dependent juveniles.[2] The juvenile petition alleged that respondent was incarcerated in August 2015 and had a scheduled release date of February or March 2016. At the time of respondent's incarceration, respondent requested that her adult daughter stay with the juveniles and provide care for them. The adult daughter did not make enough money to continue providing care for the juveniles or to maintain the home. Also at the time of her incarceration, respondent was behind on several bills, including electricity, gas, and rent. In early October 2015, the electricity in the family's home was turned off, and an eviction notice was served on the family demanding that they vacate the home by 30 October 2015. In December 2015, while respondent was incarcerated, she gave birth to Nancy. YFS obtained nonsecure custody of Nancy on 7 December 2015 and filed a juvenile petition alleging that she was a dependent juvenile.

Following a hearing on 22 February 2016, the trial court entered an adjudication and disposition order on 8 April 2016. The trial court concluded that

---

[2] The juvenile petition and nonsecure custody order also concerned four of respondent's other children, but they are not the subjects of this appeal.

Ellen, Cathy, and Nancy (collectively, the children) were dependent juveniles and continued custody with YFS.

Following her release from prison in March 2016, respondent entered into a Family Services Agreement (FSA) with YFS on 15 March 2016. The FSA required respondent to: (1) complete a Families in Recovery to Stay Together (FIRST) assessment; (2) complete a Love and Logic Parenting course; (3) obtain employment; and (4) obtain safe and stable housing. Respondent had already completed a FIRST assessment on 14 March 2016 and it was recommended that she undergo a mental health assessment at Amara Wellness. She started the parenting course on 9 April 2016. Respondent completed a mental health assessment and the Love and Logic Parenting course in May 2016.

Following a hearing on 25 October 2016, the trial court entered a permanency planning order on 15 November 2016 finding that respondent was making limited progress on her case plan. She was taking temporary work assignments through a labor agency and was living with the children's father in a motel room. The trial court set the primary permanent plan as reunification and the secondary permanent plan as adoption and guardianship.

Following a hearing on 27 January 2017, the trial court entered a subsequent permanency planning order finding that respondent needed to participate in mental health services on a consistent basis. Although it was recommended that she

participate in outpatient therapy two times per week, respondent had last seen her therapist on 6 January 2017.

The trial court held a hearing on 14 June 2017 and entered a subsequent permanency planning order on 15 August 2017 finding that respondent was not making adequate progress on her case plan within a reasonable time. She continued to live in a motel room with the children's father and acknowledged that it did not provide sufficient space to house her, the children's father, and all of her children. Respondent had last seen her therapist in May 2017. She had reported that she was working full time at Jack in the Box, but YFS was not able to confirm her employment. The trial court changed the primary permanent plan to adoption and the secondary permanent plan to reunification, guardianship, or custody with a relative or other suitable person.

Following a hearing on 1 November 2017, the trial court entered a subsequent permanency planning order on 9 November 2017 finding that respondent failed to attend therapy sessions. Respondent had not seen her therapist at Amara Wellness since May 2017. She claimed to be receiving therapy at a different agency but could not provide confirmation. Respondent had failed to attend several medical appointments for the children.

The trial court held a permanency planning hearing that began on 22 March 2018 but was continued to 3 May 2018 and then again to 13 July 2018. The trial court entered an order on 29 August 2018 finding that respondent had last participated in

therapy in March 2018 and still lived in a motel room with the children's father. Respondent had left her employment at Jack in the Box and was working at McDonald's. The trial court concluded that termination of respondent's parental rights was in the best interests of the children and ordered YFS to file a petition to terminate respondent's parental rights within sixty days.

On 27 November 2018, YFS filed petitions to terminate respondent's parental rights to the children. YFS alleged grounds of neglect, willfully leaving the children in foster care or placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to their removal, and dependency. *See* N.C.G.S. § 7B-1111(a)(1), (2), (6) (2019).

A hearing on YFS's petition for termination took place on 22 May 2019, 23 May 2019, and 11 June 2019. On 8 August 2019, the trial court entered an order terminating respondent's parental rights. The trial court concluded that grounds existed to terminate respondent's parental rights and that it was in the children's best interests that respondent's parental rights be terminated. *See* N.C.G.S. § 7B-1110(a) (2019). Respondent appealed.

Respondent contends that the trial court erred by adjudicating grounds for termination of her parental rights under N.C.G.S. § 7B-1111(a)(1), (2), and (6). Because only one ground is needed to terminate parental rights, we only address respondent's arguments regarding the ground of willfully leaving the children in foster care or a placement outside of the home for more than twelve months without

making reasonable progress to correct the conditions that led to their removal. *See In re Moore*, 306 N.C. 394, 404 (1982) ("[T]he trial court is authorized to terminate parental rights 'upon a finding of *one or more*' of the six grounds . . . .").

We review a trial court's adjudication under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). Here, respondent does not challenge any findings of fact, and thus, they are binding on appeal. *In re D.W.P.*, 373 N.C. 327, 330 (2020). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019) (citing *In re S.N.*, 194 N.C. App. 142, 146 (2008), *aff'd per curiam*, 363 N.C. 368 (2009)).

Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). "[T]he willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home 'is established when the [parent] had the ability to show reasonable progress, but was unwilling to make the effort.'" *In re L.E.W.*, 846 S.E.2d 460, 469 (N.C. 2020) (second alteration in original) (quoting *In re Fletcher*, 148 N.C. App. 228, 235 (2002)).

"[P]arental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2) . . . ." *In re B.O.A.*, 372 N.C. 372, 384 (2019). A trial court should refrain from finding that a parent has failed to make reasonable progress in correcting the conditions that led to the children's removal "simply because of his or her 'failure to fully satisfy all elements of the case plan goals." *Id.* at 385 (citation omitted). However, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.* (citation omitted).

Respondent argues that the trial court's findings of fact do not support its conclusion that she failed to correct the removal conditions by the time of the termination hearing. She argues that the conditions that must be corrected "are limited to those set forth in the underlying petition" and that "[i]ssues which arise after the child's removal are irrelevant to the analysis." Respondent asserts that by the time of the termination hearing, she had addressed the single issue that led to the removal of her children—"the need for stable and appropriate housing." Her argument is without merit.

In *In re B.O.A.*, this Court rejected a similar argument, stating that

> nothing in the relevant statutory language suggests that
> the only 'conditions of removal' that are relevant to a
> determination of whether a particular parent's parental

> rights in a particular child are subject to termination
> pursuant to N.C.G.S. § 7B-1111(a)(2) are limited to those
> which are explicitly set out in a petition seeking the entry
> of a nonsecure custody order or a determination that a
> particular child is an abused, neglected, or dependent
> juvenile.

372 N.C. at 381. The trial court in an abuse, neglect, and dependency proceeding "has

the authority to order a parent to take any step reasonably required to alleviate any

condition that directly or indirectly contributed to causing the juvenile's removal from

the parental home." *Id.* This Court concluded that:

> as long as a particular case plan provision addresses an
> issue that, directly or indirectly, contributed to causing the
> juvenile's removal from the parental home, the extent to
> which a parent has reasonably complied with that case
> plan provision is, at minimum, relevant to the
> determination of whether that parent's parental rights in
> his or her child are subject to termination for failure to
> make reasonable progress pursuant to N.C.G.S. § 7B-
> 1111(a)(2).

*Id.* at 385.

In the initial adjudication and disposition order, the trial court found that the

children were placed in YFS custody due to respondent's incarceration, "which led to

financial disruption and the eviction of the family[,]" and because no relative or

caretaker could provide for them. In addition, the trial court made unchallenged

findings of fact in its termination order that respondent's issues "revolve and have

revolved around parenting, mental health concerns, and housing instability." These

findings of fact establish the necessary "nexus" between the components of

respondent's court-approved case plan with which she failed to comply and the conditions which led to the children's removal. *See In re B.O.A.*, 372 N.C. at 385.

Respondent next argues that the trial court's findings of fact fail to support its conclusion that she willfully left the children in foster care. She contends that the findings fail to reflect her efforts to make a "positive and sustained response toward achieving reunification with her children." We disagree.

In its termination order, the trial court found that a case plan was developed for respondent in February 2016 to "address issues of parenting concerns, mental health concerns[,] and housing instability." Respondent only addressed the housing component of her case plan by moving into a four-bedroom house, and she did not address that component until April 2019.

Regarding parenting concerns, the trial court found that respondent adopted some stray cats and refused to get rid of them after Ellen and Cathy experienced allergic reactions during visitations. The trial court found that respondent had shown up for very few of the children's medical, dental, and therapy appointments, that respondent lacked the ability to understand and meet the needs of her children, and that respondent lacked a plan to understand and meet the children's needs. The trial court also found that on or about 29 August 2018, another child (Amy) of respondent who was also in YFS custody, had been placed with respondent for several months. Respondent became upset in response to a hearing during which the trial court ordered YFS to proceed with terminating respondent's parental rights to the children

and demanded that YFS pick up Amy and place her back into foster care because she did not want to take care of her.

With respect to the mental health component of respondent's case plan, the trial court found that respondent was diagnosed, *inter alia*, with unspecified personality disorder with narcissistic, antisocial, and borderline traits, bipolar I disorder, and unspecified anxiety disorder. In March 2016, it was recommended that respondent engage in mental health services with Amara Wellness. Respondent attended sessions at Amara Wellness from March 2016 until spring 2017, but was inconsistent with attending her appointments. She began receiving mental health services again in the spring of 2018 until October 2018, but she had not received any mental health treatment from October 2018 until the date of the termination hearing in May and June of 2019.

These unchallenged findings of fact establish that respondent failed to comply with the components of her case plan addressing her parenting and mental health concerns. While respondent addressed the housing component of her case plan by moving from a motel room into a house, she did so only a month before the termination hearing. This limited and delayed progress does not amount to reasonable progress in light of the fact that the children had been in YFS custody for over three years. *See, e.g., In re B.S.D.S.*, 163 N.C. App. 540, 546 (2004) (holding that when the respondent had not followed through on her obligation to seek therapy, only

seeing a counselor three weeks prior to the termination hearing, such a delayed effort was deemed to be insufficient progress.).

Based on the foregoing, we hold that the trial court's findings of fact support its conclusion that grounds exist to terminate respondent's parental rights to the children under N.C.G.S. § 7B-1111(a)(2). The trial court's conclusion on this ground is "sufficient in and of itself to support termination of respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 413 (2019). Respondent does not challenge the trial court's conclusion that termination of her parental rights is in the children's best interests. *See* N.C.G.S. § 7B-1110(a). Therefore, we affirm the trial court's order terminating respondent's parental rights to the children.

AFFIRMED.