IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-92

No. 370A20

Filed 27 August 2021

IN THE MATTER OF: A.L.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 26 February 2020 by Judge William J. Moore in District Court, Robeson County. This matter was calendared in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*J. Edward Yeager, Jr. for petitioner-appellee Robeson County Department of Social Services.*

*Maggie D. Blair for appellee Guardian ad litem.*

*Anné C. Wright for respondent-appellant mother.*

BERGER, Justice.

Respondent appeals from an order terminating her parental rights in A.L. (Arden).[1] While the trial court properly applied North Carolina law in terminating respondent's parental rights in Arden, this case should be remanded for further proceedings to ensure compliance with the Indian Child Welfare Act.

## I.     Background

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

Arden was born January 31, 2015. Arden's birth certificate listed respondent's race as "American Indian". On July 22, 2016, the Robeson County Department of Social Services (DSS) obtained nonsecure custody of Arden and filed a juvenile petition alleging her to be a neglected juvenile.

The petition alleged that DSS received a referral on December 18, 2015, which stated respondent's boyfriend "kicked her out" of the home after realizing she was using drugs. There were concerns that respondent went to her mother's house, where "they were smoking crack and snorting pills." There were also concerns of respondent having seizures because "she smoked so much dope" and of respondent having a seizure while caring for Arden. Respondent admitted to cocaine use twice a week and the use of a non-prescribed pill, Loracet, for back pain.

The petition further alleged that on February 16, 2016, respondent agreed to a case plan which required her to complete substance abuse counseling and to follow all recommendations. In late April 2016, respondent was accepted into a substance abuse program at Crystal Lake. By mid-July 2016, respondent had been removed from Crystal Lake's program. On July 18, 2016, respondent informed a DSS social worker that she had smoked "crack" with her mother, sold her food stamps for drugs, and used cocaine with her boyfriend while Arden "was with them but . . . asleep". On July 20, 2016, respondent also informed a DSS social worker that she paid her mother to watch Arden despite knowing that her mother was high. In an order issued July

22, 2016, the trial court found that Arden was a member of a State-recognized tribe and listed her race as "Indian" while ordering DSS to notify the tribe "of the need for nonsecure custody for the purpose of locating relatives or nonrelative kin for placement." The trial court reiterated that Arden was a member of a State-recognized tribe in orders dated August 31, 2016, September 1, 2016, and September 12, 2016.

¶ 5 Following a hearing on September 15, 2016, the trial court entered an order on November 9, 2016, adjudicating Arden to be a neglected juvenile. In a separate disposition order entered November 15, 2016, the trial court found that on August 31, 2016, respondent met with a DSS social worker and agreed to attend substance abuse treatment, participate and successfully complete the inpatient treatment services at Family Treatment Court, and participate in random drug screens. The permanent plan was set as reunification with a concurrent plan of adoption.

¶ 6 Following a permanency planning hearing on May 3, 2017, the trial court entered an order on July 6, 2017, finding that respondent had attended two separate facilities for substance abuse treatment during DSS's involvement. However, respondent had not successfully completed either program and was not seeing any provider to address her issues. The trial court further made findings of fact that respondent needed to address issues including housing, substance abuse, and parenting and mental health concerns.

¶ 7          Following a permanency planning hearing on November 1, 2017, the trial court entered an order on November 29, 2017, finding that on August 8, 2017, respondent entered treatment at Faith Home Recovery in South Carolina and graduated from its program on September 29, 2017. Thereafter, respondent entered residential treatment at Grace Court, and Arden was placed with respondent in a trial home placement.

¶ 8          Following a permanency planning hearing on February 7, 2018, the trial court entered an order on May 23, 2018, finding that on November 4, 2017, Grace Court staff informed a DSS social worker that respondent was testing negative on her random drug screens. On December 15, 2017, a DSS social worker made contact with Family Treatment Court and was informed that respondent was "doing well."

¶ 9          Following a permanency planning hearing on August 1, 2018, the trial court entered an order finding that Arden was placed in a licensed foster home. Respondent had been discharged from Grace Court for "insubordination" on April 6, 2018, and was receiving outpatient services at Southeastern Behavioral Health Services. On June 26, 2018, respondent was present for visitation with Arden at DSS, however, she was subsequently arrested for failure to appear for Family Treatment Court. On June 29, 2018, respondent was discharged from Family Treatment Court for noncompliance after testing positive for cocaine. On July 16, 2018, respondent informed a DSS social worker that she had "used crack . . . last Monday." The trial

court changed the permanent plan to adoption with a concurrent plan of reunification with respondent.

¶ 10 On October 24, 2018, DSS filed a petition to terminate respondent's parental rights[2] pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (3).

¶ 11 Following a permanency planning hearing on February 20, 2019, the trial court entered an order on May 8, 2019, finding that although respondent had attended three inpatient facilities for substance abuse, she had not successfully completed any of the programs. The trial court also found that she was not consistent in attending outpatient services at Southeastern Behavioral Health Services. Respondent continued to admit to cocaine use. On February 1, 2019, respondent entered the Walter B. Jones Center and successfully completed the detox program. She was discharged on February 13, 2019, but she did not follow up with any services after completing the program. The trial court further found that respondent had not completed parenting classes, was not receiving mental health services, and did not have her own housing.

¶ 12 Following a permanency planning hearing on January 15, 2020, the trial court entered an order on March 11, 2020, finding that respondent was currently receiving inpatient treatment at Miracle Hill/Shepherd's Gate. Arden had been in her current

---

[2] DSS also sought to terminate the parental rights of Arden's alleged father, and his rights were terminated. But he is not a party to this appeal.

foster home since April 6, 2018. Arden's therapist testified that after her monthly visitations with respondent, Arden would suffer from sleep disruption, breakdowns, and outbursts of anger. The trial court subsequently terminated respondent's visitations with Arden.

¶ 13 A hearing was held on the petition to terminate respondent's parental rights, and the trial court entered an order on February 26, 2020, concluding that grounds existed to terminate respondent's rights in Arden pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (3).[3] Despite the trial court's initial orders finding Arden to be a member of a State-recognized tribe, the trial court did not address the Indian Child Welfare Act in the Order on Adjudication, Order on Disposition, or the Order Terminating Respondent's Parental Rights. Respondent appeals.

¶ 14 On appeal, respondent challenges the trial court's determination that grounds existed to terminate her parental rights and argues that the trial court failed to comply with the Indian Child Welfare Act.

## II. Discussion

### A. Grounds for Termination

---

[3] The trial court found grounds for termination existed under N.C.G.S. § 7B-1111(a)(6). However, there is no evidence in the record that DSS alleged grounds for termination under this subsection, or that respondent was given notice that termination would proceed pursuant to N.C.G.S. § 7B-1111(a)(6). Given that the petitioner makes no argument on appeal for the validity of this ground, and the lack of record support, we will disregard it during our analysis.

¶ 15        Here, the trial court found grounds for termination under N.C.G.S. § 7B-1111(a)(1), (2), (3), and (6).   Because only one ground is needed to support termination, we will only review termination under N.C.G.S. § 7B-1111(a)(2).  *See* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]").

¶ 16        "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage."  *In re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796–97 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)).  We review a trial court's adjudication of grounds to terminate parental rights " 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' "  *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)).  "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding."  *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019).  Unchallenged findings are deemed to be supported by the evidence and are binding on appeal.  *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019).  "The trial court's conclusions of law are reviewable de novo on appeal."  *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

On appeal, respondent specifically challenges whether the trial court's findings of fact support its conclusion that, under N.C.G.S. § 7B-1111(a)(2), she willfully left Arden "in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances" had been made in correcting the conditions which led to Arden's removal. Respondent argues that she made reasonable progress to correct the conditions that led to Arden's removal from her home by consistently seeking and engaging in treatment. She asserts that relapses for addicts "are not uncommon or unique, and therefore not unreasonable under the circumstances" and that at the time of the termination hearing, she had been sober and successfully participating in treatment for seven months. Respondent has only challenged the determination that her progress was not reasonable and has not contested any of the underlying findings of fact, so they are binding on appeal. *In re Z.L.W.*, 372 N.C. at 437, 831 S.E.2d at 65.

N.C.G.S. § 7B-1111(a)(2) provides that a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2019). "[T]he willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home 'is established when

the [parent] had the ability to show reasonable progress, but was unwilling to make the effort.' " *In re L.E.W.*, 375 N.C. 124, 136, 846 S.E.2d 460, 469 (2020) (quoting *In re Fletcher*, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002)).

¶ 19         This Court has recognized that "parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)[.]" *In re B.O.A.*, 372 N.C. at 384, 831 S.E.2d at 313. A trial court "should refrain from finding that a parent has failed to make reasonable progress" in correcting the conditions that led to the children's removal "simply because of his or her failure to fully satisfy all elements of the case plan goals." *Id.* at 385, 831 S.E.2d at 314 (citation and quotation marks omitted). However, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)[.]" *Id.* (citation omitted).

¶ 20         In its termination order, the trial court made numerous, unchallenged findings of fact to support termination under N.C.G.S. § 7B-1111(a)(2). The trial court found that on December 18, 2015, DSS received a referral regarding respondent's substance abuse and substance use while in Arden's presence. Respondent continued to abuse drugs until at least July 9, 2019, when she admitted to using crack cocaine. Respondent also showed a consistent inability to successfully complete rehabilitation

programs over that same time period. Respondent's first attempt at rehabilitation ended on July 14, 2016, when she was kicked out for possessing an energy drink. More recently, in January 2019, she attended a substance abuse treatment group at Southeastern Behavioral Health Services. However, she was still on drugs at the time and admitted on January 22, 2019, that she had used cocaine "a few days ago".

¶ 21　　　　The trial court's extensive findings also demonstrate that Arden was removed from respondent's home in July 2016 due to respondent's substance abuse and substance use while in Arden's presence. The trial court's November 9, 2016, order, which adjudicated Arden to be a neglected juvenile, indicated that respondent entered into a case plan in February 2016 in which she agreed to complete substance abuse counseling and to follow their recommendations.

¶ 22　　　　While respondent entered numerous inpatient and residential programs to address her substance abuse issues up until the time of the termination hearing, she was unable to successfully complete the majority of the programs she entered, failed to maintain sobriety for any meaningful amount of time, and regularly admitted to DSS social workers that she was abusing substances. Her continued abuse of drugs and failure to complete the vast majority of rehabilitation programs she entered demonstrates extremely limited progress at best in correcting the conditions that led to Arden's removal.

¶ 23     As such, despite respondent's good intentions to seek help, respondent failed to improve her situation. *See In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (stating that a parent's consistent inability to improve their situation will support a finding of willfulness, regardless of good intentions). Accordingly, respondent's argument has no merit.

¶ 24     Therefore, we conclude that the trial court's unchallenged findings support its conclusion that respondent failed to make reasonable progress under the circumstances to correct the conditions that led to Arden's removal and that the trial court did not err in determining that respondent's parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2). Because only one ground is necessary to support a termination of parental rights, we need not address respondent's challenges to the trial court's conclusion that grounds existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(1), (3), and (6). *See* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]"). In addition, respondent does not challenge the trial court's determination that it was in Arden's best interests that respondent's parental rights be terminated.

## B. Indian Child Welfare Act

¶ 25     Respondent also contends the trial court erred in failing to comply with its statutory duties under the Indian Child Welfare Act (ICWA).

¶ 26        We recently addressed an argument to this effect in *In re M.L.B.*, 2021-NCSC-51, 377 N.C. 335.  This Court recognized that for all child custody proceedings occurring after 12 December 2016, the ICWA imposes a duty on the trial court to "ask each participant . . . whether the participant knows or has reason to know that the child is an Indian child."  Id. at ¶¶ 13–14 (quoting 25 C.F.R. § 23.107(a)).  "Th[is] inquiry is made at the commencement of the proceeding and all responses should be on the record."  25 C.F.R. § 23.107(a).  In this matter, as in *In re M.L.B.*, nothing in the record reflects the trial court making this inquiry or the participants' responses.  Id. at ¶ 18.  Therefore, the trial court did not comply with 25 C.F.R. § 23.107(a).  Because the trial court did not comply with 25 C.F.R. § 23.107(a), the trial court could not comply with other requirements in the ICWA and could not determine whether the trial court had reason to know Arden is an Indian child.  *See In re M.L.B.*, 2021-NCSC-51 ¶ 18; 25 C.F.R. 23.107(c) ("A court, upon conducting the inquiry required in paragraph (a) of this section, has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if . . . .").

¶ 27        DSS and the Guardian ad Litem argue that the ICWA does not apply in this case as the ICWA addresses federally recognized tribes of which the Lumbee tribe in Robeson County is not.  We disagree in part.  The ICWA imposes a duty on the trial court to inquire of participants as set forth in 25 C.F.R. § 23.107(a) in all child-custody cases, but whether the other provisions of the ICWA apply are triggered by whether

the trial court has reason to know that the child is an Indian child as defined in the ICWA. See 25 C.F.R. § 23.107. The ICWA defines Indian child to only include those eligible for membership in a tribe recognized for services by the Secretary of the Bureau of Indian Affairs of the United States. 25 U.S.C. § 1903(4), (8). DSS and the Guardian ad Litem are correct that the Lumbee tribe is not a tribe recognized for services by the Secretary of the Bureau of Indian Affairs of the United States. Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 86 Fed. Reg. 7,554, 7,556 (Jan. 29, 2021). Thus, the trial court's non-compliance with 25 C.F.R. § 23.107(a) would not be prejudicial if Arden is only eligible for membership in the Lumbee tribe, which is a state-recognized but not a federally recognized tribe.

As the determination of whether there is reason to know that Arden is an Indian child cannot be made on the record before us, we remand to the trial court. On remand the trial court "must ask each participant . . . whether the participant knows or has reason to know that [Arden] is an Indian child" on the record and receive the participants' response on the record. *See* 25 C.F.R. § 23.107(a). If there is reason to know that Arden is an Indian child, the trial court must comply with 25 C.F.R. § 23.107(b) and conduct a new hearing on termination of respondent's parental rights. DSS must also comply with 25 U.S.C. § 1912(a) and 25 C.F.R. § 23.111(d) as the party seeking termination of parental rights. If there is not a reason to know that Arden is

an Indian child, such as if Arden is only eligible for membership in the Lumbee tribe, then the trial court should enter an order to this effect and the termination of respondent's parental rights order to Arden signed February 25, 2020, remains undisturbed.

Accordingly, while we reject respondent's challenge to the termination-of-parental-rights order as the findings of fact support the conclusion of law that a ground for termination of parental rights exist, we hold that this case, given the inadequacy in the record, should be remanded to the trial court for compliance with the ICWA.

AFFIRMED IN PART AND REMANDED.